# RUGG v. TOLMAN.

### No. 2196.   Decided June 15, 1911 (117 Pac. 54).

1. EVIDENCE—JUDICIAL NOTICE—EFFECT OF GARNISHMENT. The courts may take judicial notice that ordinarily an assignment of wages, earned or to be earned, or garnishment of wages, imputes no wrong or misconduct to the debtor.   (Page 302.)

2. DAMAGES—EXEMPLARY DAMAGES—GROUNDS—MALICE.   A person with the same surname and initials as plaintiff, who was a railroad fireman, went to a money loaner and borrow money, giving an assignment of wages earned, or to be earned at some specified time, from the railway company in whose employ plaintiff then was. After a default plaintiff, in response to notice to appear at defendant's office and pay the balance due on the loan, appeared there and informed a woman in charge that the signature was not his, and that he had not borrowed the money. Six or eight months thereafter he was again notified to call, which he did, giving the same assurance and again writing his name on a paper which he left at the office. Later, one day before pay day, and without further notice, defendant filed with the railway company an assignment of wages, and on pay day the paymaster informed plaintiff, in presence of a large number of his coemployees, that defendant, naming him, had plaintiff's check, and "that he should keep away from these people." Plaintiff immediately went to defendant's office and convinced the woman in charge that the signature was not his, and plaintiff's check was released. Two days thereafter plaintiff was suspended and kept out of employment for twenty-one days by reason of the acts of the defendant. *Held*, that defendant's acts were not wanton and malicious, and exemplary damages were not recoverable.   (Page 303.)

3. DAMAGES—"EXEMPLARY DAMAGES"—GROUNDS.   Exemplary damages are such as are in excess of the actual loss, and are allowed where a tort is aggravated by evil, or where the defendant acted wilfully or with such gross negligence as to indicate a wanton disregard of the rights of others. The law does not allow such damages for mere negligence, though gross, nor for mistakes that may affect the rights of others, unless some acts indicative of bad motives or intention to oppress or wrongfully harass another is manifest.   (Page 304.)

4. APPEAL AND ERROR—DISPOSITION OF CAUSE—CONDITIONAL AFFIRMANCE.   Where plaintiff's actual damages were certain and ascertainable, amounting to $54.60, and he was erroneously permitted

to recover exemplary damages, and the verdict awarded was $854.60, the court, on appeal, would not reverse the judgment unconditionally, but would affirm it for $54.60 conditioned on remittitur of $800. (Page 306.)

APPEAL from District Court, Third District. *Hon. M. L. Ritchie,* Judge.

Action by H. F. Rugg against D. H. Tolman, doing business as Union Credit & Investment Company.

Judgment for plaintiff. Defendant appeals.

MODIFIED AND AFFIRMED CONDITIONALLY.

*W. R. Hutchinson* for appellant.

*Daniel Harrington* for respondent.

FRICK, C. J.

This was an action to recover damages alleged to have been sustained by respondent on account of having been discharged by his employer by reason of the "willful, wrongful, and malicious" acts of appellant as hereinafter stated.

The material facts, taken from respondent's statement of the facts, most favorable to him, in substance, are: That on September 1, 1906, a man signing his name as H. F. Rugg, which is the name, including the initials, of respondent, obtained a loan of $19.80 from appellant, who, it seems, was engaged in the business of lending money to persons employed for wages or on salaries; that said loan was to be repaid in installments, and to secure its repayment the man signing as aforesaid assigned to appellant his wages earned or to be earned within a specified time from the Rio Grande Western Railway Company in whose employ he said he then was; that no special or particular description of the man obtaining the loan was made or kept in the office of appellant at the time the loan was made; that the person obtaining said loan, within a short time thereafter, paid two installments thereon of $6.60 each, amounting to $13.20, leaving a balance due;

that on November 10, 1906, the person who borrowed the money, under the name of H. F. Rugg, wrote appellant a letter directed to Salt Lake City, dated at Sacramento, Cal., in which he informed appellant that, "owing to my absence from the city, it will be about the 15th of the month before the payment due on my loan will reach your office, as I will have to send it from here after I get my money from Salt Lake City;" that appellant received no remittance from the writer of said letter as indicated therein, nor did he make any further payments on said loan; that in October, 1907, said loan not having been paid, and being long past due, the respondent received notice to appear at the office of appellant and pay the balance due thereon; that respondent, with his brother, called at appellant's office, and, when shown the papers and signature of H. F. Rugg, the person who borrowed the money, he informed the young woman in charge of the office that the signature to the papers evidencing said loan and assignment of wages was not his, and that he had not borrowed any money from appellant, and hence did not owe him anything, and to convince the young lady in charge that the signature on the papers was not his he wrote his name on a paper, as requested by her, and left the paper with her; that matters remained in this condition for six or eight months thereafter, when respondent was again notified to call at appellant's office at Salt Lake City, and this time his father went with him, and he again informed the young woman then in charge that the signature to the papers was not his, and at her request he again wrote his name on a paper, which he left with her; that nothing further was done in the matter until the 9th day of June, 1909, when, without further notice to respondent, the employees of appellant filed with the railway company aforesaid the assignment to appellant of what was assumed to be respondent's wages and demanded the wages due to respondent for the current month; that on the 10th day of June, 1909, the same being the regular pay day of said railway company, the respondent, with other employees, called for his pay check at the pay car of the railway company, and the paymaster of said company then informed respondent,

in presence of a large number ("eight or ten") of his coemployees that "Tolman (the appellant) had his check, and that he should keep away from these people;" that respondent immediately went to appellant's office again and informed the young lady in charge of the office what had happened, and he again insisted that he owed appellant nothing, and that his check was wrongfully withheld from him.

It also appears from the record that at this time respondent apparently succeeded in convincing the young woman who was in the office at that time that the signature to the papers evidencing the loan and assigning the wages was not his, and that he did not owe the debt. The young woman thereupon, within an hour after respondent had called at the office as aforesaid, delivered to his attorney a release of the check, and respondent at once went to the paymaster and obtained his check and went back to work for the railway company. In two days thereafter, however, the caller of the railway company informed respondent that he was suspended from or was out of service for the reason that his wages had been garnisheed or held up as aforesaid. Respondent contends that his services were dispensed with under the rules of the company, because the appellant, after giving respondent the release, did not immediately notify the proper department of the railway company of such release; that respondent did not do this because it was not his duty to do it, and that he had done all that he was required to do in the matter; that in view that appellant did not notify the proper officers of said department they assumed that respondent had not obtained a release of his check, and hence suspended him from his employment. Respondent was out of employment for a period of twenty-one days. While employed his wages were $2.60 per day, and his actual damages which were caused by appellant's acts as aforesaid amounted to $54.60. It was also made to appear that when the loan was made and during the time herein mentioned he was in the employ of the Rio Grande Western Railway Company as fireman. Respondent, however, also alleged that by reason of the acts and conduct of appellant's employees and the statement made by the paymaster of the rail-

way company that respondent's check had been held up by appellant he was "personally humiliated and injured in the estimation of his fellow workmen, and the same caused him great distress. . ., . to his injury in the sum of $1000." No evidence was adduced, however, in support of the claim for consequential damages, except the facts above set forth and respondent's statement, on direct examination, that he was "greatly humiliated" by the statement made by the pay-master in presence of respondent's co-employees that his check had been held up by appellant. On cross-examination, however, he admitted that his mental equilibrium had never been disturbed; that he had lost no sleep over the matter; and that both his mental and physical condition had always remained normal.

There is considerable evidence on the part of appellant, some of which is in direct conflict with the statements and other evidence of respondent. We, however, deem it unnecessary to refer to such evidence, except to say that it is practically undisputed that appellant had a bona fide claim against some man who signed his name as H. F. Rugg, the name of respondent; that such signature was conceded by both parties to be a forgery; that appellant himself lived in New York City, and that his entire business in Salt Lake City was conducted by female employees; that different young women were in charge of the office at the several times when respondent called, as hereinbefore stated, by reason of the fact that the young women employees would be changed from time to time. There is no evidence whatever that appellant had any personal knowledge of the facts and circumstances, or that any one of the young women with whom respondent had dealings in the office knew him personally or had any knowledge with respect to the loan other than what appeared from the papers evidencing the same and from the record kept in the office, which was very meager, giving a mere outline of the facts that the loan had been made to a person by the name of H. F. Rugg, when it was made, the amount thereof, and the amount of the payments and the dates when made. There was also a brief entry to the effect

that H. F. Rugg, presumably the respondent, "says he isn't our man. That his stepbrother forged his name;" and some entries, dated August 6, 1906, showing that the employees of appellant had, prior to that date, obtained some information from a few business men of Salt Lake City concerning the standing of a young man by the name of H. F. Rugg.

The jury found for the respondent and allowed him as damages the sum of $854.60. From this verdict it is apparent that in addition to the actual damages claimed by respondent, all of which the jury allowed as claimed, the jury also awarded him, either as consequential or exemplary damages, or both, the sum of $800. The appeal is from the judgment entered on the verdict.

The principal errors assigned relate to the giving of certain instructions, and that there is no evidence in support of the verdict and judgment in excess of the actual damages sustained by respondent. The latter assignment presents the real question in the case, since the objection to the instructions relates to the same question, presenting it in another form merely. The court charged the jury that if they allowed exemplary damages they should separately state in their verdict the amount they allowed as actual and what amount, if any, they allowed as exemplary damages. As we have pointed out, the jury simply found for respondent and assessed his damages at the sum of $854.60, when the proof showed only $54.60 as actual damages. As there was no evidence of actual damages beyond the sum of $54.60, the $800 must have been allowed respondent for humiliation or as exemplary damages. The court submitted the case to the jury upon the theory that they might award respondent exemplary damages. In our judgment there is no evidence upon which to base a finding that respondent suffered any substantial damages by reason of his humiliation in the sum of $800, or in any other amount. To allow such a verdict to stand upon the present state of the evidence would in legal effect amount to confiscation. It would compel the appellant to transfer $800 of his money to respondent, when there was

no legal right in respondent to receive said sum from appellant.

Upon what facts are such a verdict and judgment based? Briefly these: That some person obtained a loan from appellant and signed the name of respondent to the papers evidencing the same, and to the assignment of the wages to be earned from the railway company securing the repayment of the money borrowed; that the employees of appellant in attempting to collect the loan made a mistake in assuming that respondent had borrowed the money, and in further assuming that he had made the assignment of his wages and in filing it with the railway company; that after said assignment was filed the paymaster of the railway company refused to deliver to respondent his check for the current month, unless the assignment was withdrawn; that respondent, after the refusal of the paymaster to deliver his check, immediately went to the young woman in charge of appellant's business and apparently convinced her that he had not borrowed the money nor made the assignment of wages, and within an hour thereafter the claim upon respondent's check was withdrawn, and he went to the pay car of the railway company and obtained his check, and that two days thereafter he was suspended from service by the railway company.

Upon these facts, therefore, the jury not only allowed respondent every cent of actual damages which he proved, but they added thereto the sum of $800 for something called respondent's humiliation, or something else. It must be conceded that appellant had no right to interfere with respondent's affairs or to prevent him from promptly obtaining his pay check, and in case of any interference in that regard appellant would have to indemnify respondent for any injury and damages that were the direct result of such interference. If respondent, however, sustained any damages and appellant has fully compensated him therefor, then, unless (in view of all the facts and circumstances of this case) appellant's acts were maliciously done or were of that character from which malice could be implied, respondent could recover only actual or compensatory damages. The circum-

stances of this case are not such from which a jury would be justified to allow any substantial sum for injured feelings or humiliation. No indignities to respondent of any kind were either offered or intended; no force or violence of any kind was either threatened or used against him.

From the evidence it is apparent enough that assignments and garnishments of wages of railway employees were not at all uncommon, and courts may well take judicial notice of the fact that, ordinarily at least, neither the assignment nor the garnishment of wages imputes any wrong or misconduct of any kind to the debtor. When, therefore, there is no wrong of any kind imputed, and neither language nor any act of violence of any kind is used which would cause the debtor to be humiliated, he may not feign such humiliation and recover damages therefor. To illustrate: If in this case appellant had claimed a certain amount as owing him from respondent, although as a matter of fact he owed appellant nothing, and appellant had instituted an action to recover the same, unless such action were maliciously instituted, respondent could recover only his costs, however much mistaken appellant might have been in his claim. Again, assuming that appellant had garnisheed respondent's wages, which were exempt, and upon which appellant had no legal claim whatever, the respondent would only be entitled to recover back of what he had thus wrongfully been deprived. In other words, actual or compensatory damages, with costs of suit. (1 Sutherland on Damages [3d Ed.], section 3; *Stark v. Bare,* 39 Kan. 100, 17 Pac. 826, 7 Am. St. Rep. 537; *Albrecht v. Treitscke,* 17 Neb. 205, 22 N. W. 418; *Haswell v. Parsons,* 15 Cal. 266, 76 Am. Dec. 480.) The foregoing principles are elementary, and we do not think that any one will seriously contend that if appellant had made a mistake in either suing respondent or garnisheeing his exempt wages, or in levying upon his exempt property and had appropriated the same to his own use, unless there was some evil motive or oppression, or fraud, on the part of appellant, anything but actual or compensatory damages could be allowed respondent.

This brings us face to face with the proposition, namely, is there any basis in this case upon which to rest exemplary or punitive damages? The question, therefore, is, were appellant's employees, in what they did, actuated by bad motives or by express malice, or were their acts of such a gross, wanton, reckless, and oppressive character from which malice or bad motives could be implied? As we have seen, the court submitted these questions to the jury, and while in their verdict they do not indicate whether they allowed exemplary or punitive damages or not, yet, in view of the fact that the judgment will have to be reversed, we are required to pass upon the question of whether punitive damages can be allowed in this case or not. There is no evidence of actual malice in this case, nor are the facts such from which any such malice can be reasonably inferred. Neither one of appellant's employees had any personal acquaintance with respondent, and nothing is shown from which it can be inferred that either one of the young women with whom he had dealings had the slightest cause for ill will against him. Nor could the appellant personally have had any feelings against respondent, since it does not even appear that appellant ever knew of the transaction, or that he knew aught of or concerning the respondent. In view of the foregoing, the right to recover exemplary damages must therefore rest, if it has any basis, upon the negligence of the young women in their attempts to collect the loan in question in the manner in which it was done. In view that the evidence disclosed that the several interviews that respondent had with regard to the loan were had with different young women in the office, and that each one of them apparently relied upon what the records of the office disclosed, and not upon personal knowledge, we cannot see how their acts, or the acts of either of them, were such as to authorize a finding of implied malice.

The rule with respect to when exemplary damages may be recovered for implied malice for negligent acts and con-

duct affecting the rights of others is well stated in    **3**
12 Am. & Eng. Ency. L. (2d Ed.), p. 28, in the following language:

"While the term 'gross' is constantly used in this connection, many cases explain it by declaring that the rule of exemplary damages requires negligence in such degree as to amount to wantonness and positive misconduct, manifesting a conscious disregard of the rights of others and a reckless indifference to consequences. And so is believed to be the weight of authority."

In 3 Words and Phrases, pp. 2577, 2578, in defining exemplary damages and under what circumstances such may be recovered, it is said:

"Exemplary, punitive, or vindictive damages are such damages as are in excess of the actual loss, and are allowed where a tort is aggravated by evil motive, actual malice, deliberate violence, oppression, or fraud, . . . or where the defendant acted wilfully or with such gross negligence as to indicate a wanton disregard of the rights of others."

In 13 Cyc., p. 108, the rule is stated thus:

"Unless there is some element of malice, or gross negligence, or circumstances of aggravation, the measure of damages is the measure of compensation for the loss sustained, and nothing more, and an instruction as to punitive damages when there is no substantial evidence that the negligent act complained of was wanton or malicious has been held to be erroneous."

The foregoing statements seem to be supported by the great weight of authority, and are illustrated and applied in many concrete cases of which the following are excellent examples: *Raynor v. Nims,* 37 Mich. 34, 26 Am. Rep. 493; *Baltimore, etc. Co. v. Boone,* 45 Md. 344; and *Borland v. Barrett,* 76 Va. 128, 44 Am. Rep. 152.

The foregoing rule with respect to exemplary damages has virtually been adopted as the correct one by this court in the case of *Murphy v. Booth,* 36 Utah 285, 103 Pac. 770, where Mr. Justice McCarty refers to the rule as we have stated it above. In *Crymble v. Mulvaney,* 21 Colo. at page 210, 40 Pac. 501, it is said: "To justify a recovery of exemplary

damages, the act causing the injury must be done with an evil intent and with the purpose of injuring the plaintiff, or with such a wanton and reckless disregard of his rights as evidences a wrongful motive." In *Yerian v. Linkletter,* 80 Cal. 135, 22 Pac. 70, under a California statute which provides that exemplary damages may be recovered "when the defendant has been guilty of oppression, fraud, or malice, actual or presumed," it was held by the Supreme Court of California that such damages are not recoverable for merely "gross negligence."

Men may differ as to whether the young women in charge of appellant's business did or did not exercise proper care in attempting to collect the loan in question, but men cannot differ upon the  question as to whether their acts were so reckless or wanton as to show a total disregard for respondent's rights. Nor can it be truthfully said that the acts of either one or of all of them combined were such as would indicate oppression or a wrongful or willful intent on their part to injure respondent. The difficulty with the case is that all the acts which in some way affected respondent, including those of the person obtaining the loan and those of the paymaster and other employees of the railway company, whether directly attributable to the acts of the young women or not, were charged up against them. The law does not, and in the nature of things cannot, allow exemplary or punitive damages for mere negligence, although gross, nor for mistakes that may affect the rights of others, unless some act or acts indicative of bad motives or an intention to oppress or wrongfully vex and harass another is made manifest. Actual and compensatory damages is the rule, and exemplary or punitive damages the exception. As the evidence now stands, we can see no basis for the allowance of exemplary damages; nor can we see any evidence whatever upon which substantial damages for injured feelings or humiliation can be based.

There is no assignment relative to the allowance of actual damages. In view of this fact, and in view of all the facts and circumstances of this case, we shall therefore not reverse

39 Utah—20

the judgment unconditionally, but shall do so upon condition only that the respondent, within twenty days, after receiving notice of this decision, shall refuse to remit from the judgment the sum of $800 as of the date of the judgment. The judgment, therefore, should be that in case the respondent, within twenty days after receiving notice of this decision, will remit the sum of $800 from the judgment as of the date of ·its rendition in the district court the judgment of said court will be affirmed for the sum of $54.60, without costs to either party; and in case respondent shall refuse to so remit the judgment will be reversed, and the cause remanded to the district court, with directions to grant a new trial and to proceed with the case in accordance with the views herein expressed. In case the cause is reversed, appellant shall recover his costs on this appeal. It is so ordered.

McCARTY, J., concurs.

STRAUP, J. (concurring).

I concur in the result. I think, though, appellant ought to be given costs. The judgment had against him was for $854.60. His only remedy to obtain relief therefrom was by appeal. We hold that $800 of that judgment were wrongfully assessed to him. To that extent, which was largely the whole extent, he was the prevailing party, and ought to have his costs.