CALHOUN v. UNIVERSAL CREDIT CO. et al.

No. 6594. Decided February 21, 1944. (146 P. 2d 284.)

168

See 17 C. J. S. Contracts, sec. 377. 46 Am. Jur. 458.

*Romney & Boyer*, of Salt Lake City, for appellants.

*John A. Hendricks*, of Ogden, for respondent.

LARSON, Justice.

This case came to the writer on assignment due to the retirement of a district judge.

The District Court of Weber County gave judgment for plaintiff and against defendants in the amount of $247 actual damages, and against defendant Universal Credit Company for $200, punitive damages. Defendants appeal.

On February 5, 1941, plaintiff entered into a written contract with defendant Hunter Motor Company for the purchase of a 1939 Dodge sedan. Of the $869.59 purchase price, $175 was paid at the time of execution of the contract, and payments were $40 on February 12, 1941; seventeen monthly installments of $30 each, payable on the 27th of each month; and a final installment of $143.63. The contract was assigned to defendant Universal Credit Co. Payments were made on the contract to and including January 16, 1942; the payment mailed on February 16, 1942, was returned to plaintiff. All of these payments were made after they fell due, some a day or two late, and others as much as a month late. About February 1, 1942, plaintiff wrote Universal Credit Company stating that he expected to be inducted into the army, and would like to see their representative in regard to the automobile contract. One Sanders, an adjuster for Universal Credit Company, called on plaintiff in response to his letter, and told plaintiff that he might have time to make some disposition of the automobile so that he could get his equity out of it, though it is disputed whether he gave plaintiff a definite time or not to make such disposition. On February 16, 1942, without having again contacted plaintiff personally, Sanders repossessed the automobile by taking it from near plaintiff's residence. He took the car to Hunter Motor Co., where it

was stored until certain repairs were made and it was resold. Hunter Motor Company took up the contract and paid the balance due thereon. The court found there had been a waiver of strict compliance with the terms of the contract; that plaintiff was entitled to demand for payment before defendants might repossess the automobile; and that defendants were therefore guilty of a conversion of the automobile. Judgment was rendered against both defendants for $247, the value of plaintiff's equity in the automobile at the time it was converted, and against Universal Credit Company for the additional sum of $200, as punitive damages, since the court found that the conversion was malicious. Defendants appeal.

At the outset, there are two propositions which present themselves for consideration: Under the contract of the parties is it possible to have an unwritten waiver of strict compliance with the terms thereof, and if so, under the evidence herein, was there such a waiver? We set out the relevant portions of the contract:

"Time is of the essence of this contract and if any installment is not paid in full when due, or if purchaser fails to perform any of his obligations or comply with any condition of this contract * * * this contract shall be in default and the full amount remaining unpaid shall immediately become due and payable.

"Upon any such default, seller may take immediate possession of said property including any equipment or accessories thereto without legal process, without demand and for this purpose seller may enter any premises where said property may be found and remove the same.

"Acceptance of any payments after maturity or acceptance of a partial payment or waiver or condonation of any other breach or default shall not constitute a waiver of any other or subsequent breach or default or prevent seller from immediately pursuing any or all of its remedies and no waiver of or change in the terms of this contract shall be binding on Universal Credit Company unless evidenced by writing signed by the parties."

Appellants contend that under the contract, as a matter of law, there can be no waiver of strict compliance unless it be in writing. In finding No. 12, the court found defendant

Universal Credit Company had waived strict compliance with the terms of the contract. It is not denied by either party that there was additional time given to plaintiff within which to make some arrangements as to the disposition of the car, with a view to getting his equity out of it. Defendants contend that on February 4, 1942, through Sanders plaintiff was given until February 7, 1942, to make some disposition of the car, and that plaintiff agreed to deliver it to defendant Hunter Motor Company by that date if other arrangements were not made. Plaintiff, on the other hand, contends that Sanders merely said he could have time to make some disposition of the car, but did not specify any particular time within which arrangements would have to be completed. We have discussed at some length the question of waiver in *Loftis* v. *Pacific Mut. Insurance Co.*, 38 Utah 532, 114 P. 134, 137, wherein it was said:

"That insurance companies may waive prompt payment of policies, although such payment is of the essence of the contract of insurance and may continue and treat policies in force * * * is too well settled to admit of dispute."

There is no reason why the rule applicable to insurance payment contracts should not be applied to any installment payment contracts where time is of the essence. And going on:

" * * * the weight of authority is also to the effect that such waiver may be made by an agent of the company who has either express or implied authority to do so. * * * If the agent be * * * intrusted with that branch of the business wherein waivers are usually made, a waiver, if knowingly and intentionally made, is binding on the company, *although there is a provision in the policy* that no waiver is to become effective unless made by some particular officer or officers and *unless indorsed on the policy.*" (Citing authorities.) (Italics added.)

And in *Beardslee* v. *North Pacific Finance Corp.*, 161 Wash. 86, 296 P. 155, 158, the court in considering whether a waiver *could in law be made,* said merely:

"That modification, whether oral or written, extending or changing

the time of payment, changes the terms of the contract, and, to that extent, a new contract is made by the parties. * * * The provision that a waiver of any breach of the contract shall not be deemed to be a waiver of any subsequent failure of strict compliance with any and every term of the contract, as well as any other term of the contract could be modified by agreement of the parties."

To the same effect see *Pacific Fanance Corp.* v. *Webster*, 161 Wash. 255, 296 P. 809. In the instant case, if there was an express waiver or extension of time it was made by Sanders, an adjuster. In *Commercial Credit Co.* v. *Macht*, 89 Ind. App. 59, 165 N. E. 766, it was said:

"An adjuster is defined as one who is appointed to adjust a matter to ascertain, to arrange or settle. *St. Paul, etc., Ins. Co.* v. *Mountain [Park], etc., Co.*, 23 Okl. 79, 86, 99 P. 647. He is the person who makes the adjustments or settlements. *Flaherty* v. *Continental, etc., Co.*, 20 App. Div. 275, 46 N. Y. 934."

This definition falls within the rule laid down in *Loftis* v. *Pacific Mut. Ins. Co.*, supra, as an agent entrusted with that branch of the business where waivers, or other adjustments are ordinarily made. Thus it appears that the parties *may* by oral agreement, change the terms of their contracts, and that in the instant case, Sanders was an agent of defendant Credit Company, with apparent authority at least, to make such change on behalf of the company. Further than this, both parties admit that there was some change in the contract, the dispute being only as to the nature of the change. The trial court found that Sanders granted plaintiff "time to try and dispose of the auto or to decide whether he wanted to keep it himself." Since this finding is fairly supported by the evidence, we are bound by it. The issue was squarely before the trial court, as to whether Sanders' extension of time was only until February 7th, so while the above finding is not as clear as might be desired, we construe it to mean that it was an indefinite time extension which Sanders gave plaintiff. That was the burden of plaintiff's evidence, which apparently the court believed.

What, then, is the legal result of such extension? In *Commercial Credit Co.* v. *Macht*, it was held that by giving an extension of time for payment of an amount then due, the seller waived his right to a forfeiture. In other words, the extension is in effect a waiver. In *Columbia Airways, Inc.*, v. *Stevens*, 80 Utah 215, 14 P. 2d 984, 987, we said:

"We think it clear that the vendor waived default and was therefore under the necessity of giving notice and an opportunity for payment before a forfeiture and repossession could be claimed."

In *Beardslee* v. *North Pacific Finance Corp.*, supra, the rule is well stated:

"' * * * Where one by his conduct has caused the other to believe that he has waived a provision which was placed there for his benefit, and considers the contract in full force and effect, common honesty between men requires that, if he subsequently desires to enforce the provision, reasonable time must be given the other party to comply with the terms of the contract. The rule is tersely stated in 24 R. C. L. p. 284 as follows:

"' "Though the right of one party to terminate the contract for the default of the other party is recognized, still he has the right to treat the contract as continuing, the right to terminate being given for his benefit; and it seems to be generally recognized that, if he wishes to exercise this right, he must give reasonable notice of his election to do so to the party in default, else he will be deemed to have waived his right of termination on account of such past breaches." ' *Yours Truly Biscuit Co.* v. *Lilly Co.*, 142 Wash. 513, 253 P. 817." See also 46 Am. Jur. para. 274.

The court then goes on to find that a demand for payment "by return mail" does not constitute a demand giving reasonable notice or time to comply with that demand by paying the amount due and owing. And in *Lundberg* v. *Switzer*, 146 Wash. 416, 263 P. 178, 179, 59 A. L. R. 131, the court said:

"The appellants cite a long line of cases from this and other courts holding that the right of forfeiture cannot be exercised without demand and a reasonable opportunity to comply after there has been a waiver of strict performance by the acceptance of delayed payments. [or an extension of time to make payments] About this rule there is no controversy as it is firmly written into the law."

In *Commercial Credit Co.* v. *Macht*, supra, the court dealt with a definite extension of time, saying:

"Having given appellee an extension of time for the payment of the amount due it thereby waived all right to forfeit the contract until the time of the extension had expired. It could not on the next day, and before the time had expired, assume an inconsistent position. * * *."

Thus, until notice of intention to enforce the forfeiture provisions of the contract was given, and a reasonable time to comply with the demand for payment allowed, an indefinite extension of time would not expire, and defendants could not repossess the automobile.

Defendants contend that notice was given and demand was made. Sanders testified that on February 10th, 6 days before repossession, he called at the plaintiff's residence, but did not talk with plaintiff. He was told by plaintiff's sister that he (plaintiff) had the money to pay the balance due, and would do so. In reply, Sanders told her that if the money were not paid "right away" he would take some action. However, plaintiff's testimony is to the effect that his sister told him nothing about this conversation. Therefore, even though this were an attempted demand and notice, it would be ineffectual, not having been communicated to the plaintiff.

Defendants' next objection is that plaintiff did not plead the facts constituting a waiver, and therefore he cannot rely on such theory for his case. However, the record discloses that defendants put in the evidence as to the indefinite extension, on their cross-examination of plaintiff. Thereafter they produced a witness of their own to contradict plaintiff's testimony. Having introduced such evidence, without limiting its purpose or application, defendants may not now complain if plaintiff relies upon it in his behalf. After the trial, plaintiff filed a complaint to conform to the evidence, and therein made the allegation that: "the defendants waived time of payment due January 27, 1942 * * *." While such allegation might have

been subject to attack by demurrer, under the circumstances of this case, defendants may not now complain, since they merely answered below and did not demur, and since defendants produced the only evidence as to this indefinite extension.

Defendants also complain that the amended complaint to conform to the evidence, was filed without order of the court, and therefore should not be considered as having been filed in the action. Here too, they must fail. Were the complaint not properly filed, defendants might have attacked the same by proper motion, at that time. However, they chose to file answers thereto, and secured an order of the court reciting that they might file these answers "to plaintiff's amended complaint, *which had been filed herein.* \* \* \*" (Italics added.) Thus, both court and defendants recognized that the complaint was on file in the action, and the irregularity, if any, in the manner of filing, was thereby waived or cured.

Defendants argue that even if the judgment for the value of plaintiff's equity be upheld, the judgment for punitive damages is error. Neither party quarrels with the rule as to punitive damages laid down in *Patrick* v. *Employers Mutual Liability Ins. Co.,* 233 Mo. App. 251, 118 S. W. 2d 116, 126:

"Therefore, the evidence comes within the rule laid down in *Hall* v. *St. Louis-San Francisco Ry. Co.,* 224 Mo. App. 431, 28 S. W. 2d 687, 691, cited by defendant as follows: '*The party must know that the act is wrongful* and must do it intentionally without just cause or excuse. If he acts in good faith and in the honest belief that his act is lawful, he is not liable for punitive damages even though he may be mistaken as to the legality of his act. *Bean* v. *Branson,* 217 Mo. App. 399, 408, 409, 266 S. W. 743.' *Lampert* v. *Judge, etc., Drug Co.,* 238 Mo. 409, 141 S. W. 1095 [37 L. R. A., N. S. 533, Ann. Cas. 1913A, 351]."

To the same effect in *Rugg* v. *Tolman,* 39 Utah 295, 117 P. 54, 57, where the court quoting from *Crymble* v. *Mulvaney,* 21 Colo. 203, 210, 40 P. 499, 501, says:

" 'To justify a recovery of exemplary damages, the act causing the injury must be done with an evil intent and with the purpose of injur-

ing the plaintiff, or with such a wanton and reckless disregard of his rights as evidences a wrongful motive.' "

The ground of disagreement between the parties is as to whether the facts of the instant case are within the above rule. The trial court awarded punitive damages, after making a finding that the conversion was malicious. ■ The evidence does not sustain such finding. The judgment for punitive damages is set aside. Judgment as so modified is affirmed. Each party to bear his own costs.

McDONOUGH and MOFFAT, JJ., concur.

WOLFE, Chief Justice (concurring specially).

I see no evidence to sustain the finding that the taking of the car by Sanders was with evil intent or that he knew that his act was wrongful and did it in bad faith. The contract was made on February 5, 1941. There was a waiver of strict performance by the appellant accepting payments after their due dates. Finally the appellant extended for a consideration the due dates of all the payments. This was not a waiver. This was a new contract fixing new due dates. Payments on their new due dates were not promptly met and again accepted after the date when they were due. Thus again the company may be said to have waived strict performance with the requirement of the new contract which pertained only to dates for instalment payments. Then in February, 1942, the company received the following letter:

"Due to my being inducted into the Army I am forced to terminate my payments on the automobile. I will be here in town for a few more days. So please send your field man to talk this matter over or advise what you would prefer doing."

It sent Sanders, its field man, to plaintiff's house. It was agreed that the plaintiff should have the opportunity to dispose of the car or refinance it. Sanders said February 7, 1942, was the date fixed for plaintiff's turning the car back to the Hunter Motor Company if he did not succeed

in paying the balance owing. There was a conflict as to whether February 7th or any date was named. The court merely found that the plaintiff was granted "time to try to dispose of the auto or to decide whether he wanted to keep it himself." Since plaintiff's induction date was February 9, 1942, it seems quite likely that Sanders would want the matter determined before he left for service but granted that February 7th was not the date fixed there is nothing to show that Sanders did not honestly believe that it was. He went to plaintiff's home on the afternoon of February 7th and was told that plaintiff was not in but would return at 7:30 p.m. He returned at 7:30 and found no one home. He visited plaintiff's home again on February 10, 1942, and was told by plaintiff's sister that plaintiff was asleep. Sanders then told the sister that if the money was not paid "right away" he would take some action. Even though this message to the sister was not communicated to the plaintiff it shows that Sanders was certainly not acting in bad faith. One wonders how many times an agent must call and pursue a party whose payment is in default in order to adjust the matter. I have some doubt in this case whether under the circumstances, notice had to be served on the plaintiff that appellant would insist on strict performance. Where one party is in default and the other party is obliging him by agreeing to wait until a definite date or until such time as to enable him to try and refinance or sell, this is not the same as waiving strict performance by accepting payments after due dates. This constitutes an arrangement to give the defaulting party at his request a definite or a reasonable time to complete arrangements. When the definite or reasonable time elapses the creditor may pursue his rights under the contract. We held in *Salt Lake Wet Wash Laundry* v. *Colorado By-Products Company,* 104 Utah 385, 140 P. 2d 344, that it was not necessary in order to put in default another party who had a reasonable time in which to act that that party be given notice when the first party considered a reasonable time to elapse. I am not disagreeing with that part of the opinion because it may be that a reasonable time had not

elapsed before February 16th when appellant repossessed the car. Certainly after all the calls on plaintiff and after Sanders was unable to find him in or reach him and after he, Sanders, had told plaintiff's sister that he must pay right away, when Sanders understood that the dead line of February 7th had already passed, Sanders could hardly have been acting maliciously or in bad faith when finally on February 16th he came and took the car. After he had it in tow but before leaving the premises he notified plaintiff that he was taking the car. That he took the car while plaintiff was sleeping on February 16, 1942, would not seem to indicate a knowledge of wrong doing. It was claimed that plaintiff had been sleeping before when Sanders came. If Sanders was under the impression that the parties had agreed on February 7th as the date by which the car would be turned back or the balance paid, and had still made several attempts thereafter to give plaintiff a chance, his action would seem consistent with exhausted patience. I see evidence of this but not of maliciousness and therefore agree that there is no evidence to support the verdict for punitive damages.

WADE, J., being disqualified, did not participate herein.