**LIVING SCRIPTURES, INC., a Utah corporation, Plaintiff and Appellee,**

v.

**Michaeljohn KUDLIK, individually and doing business as California Suds, Defendant and Appellant.**

**No. 940200–CA.**

Court of Appeals of Utah.

Feb. 9, 1995.

---

**8**

John T. Anderson, Anderson & Karrenberg, Salt Lake City, for appellant.

Scott F. Young and Mark A. Wagner, Kimball, Parr, Waddoups, Brown, Salt Lake City, for appellee.

Before BENCH, BILLINGS and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Michaeljohn Kudlik challenges the trial court's order directing Kudlik to restore possession of leased property to Living Scriptures, Inc. (LSI), and pay past-due rent, treble damages, attorney fees and costs, and postjudgment interest, based upon the trial court's conclusion that LSI did not waive its right to demand timely rent payment under the lease. We affirm.

## FACTS

Myrtle M. Couch, as landlord, and Jay Anderson and Dale Minson, as tenants, entered into a lease agreement concerning property in Ogden, Utah. Couch later assigned her interest in the lease to LSI, and in 1991, Anderson and Minson assigned their interest and obligation in the lease to Kudlik. By February 1993, Kudlik had failed to pay property taxes for 1991 and 1992 as required by the lease, and was two months behind in rent. LSI contacted its attorney, who notified Kudlik that he was in default under the lease. To assist Kudlik in curing his defaults, LSI and Kudlik entered into a Memorandum of Understanding (memorandum), pursuant to which Kudlik agreed to cure existing defaults and to thereafter make timely payments under the lease. The memorandum specified that any payment not received on or before its due date would constitute a breach, and that LSI could terminate the lease if payments were received late. The memorandum also stated that any waiver by either party of any breach was not to be construed as a continuing waiver of, or consent to, any subsequent breach by the other party.

Kudlik made the past-due tax and rent payments according to the schedule in the memorandum, but his March, April, and May rent payments were late. He then failed to pay the June and July payments. LSI again notified its attorney of these defaults. On August 2 and again on August 3, 1993, LSI's attorney contacted Kudlik and informed him that LSI continued to insist on strict performance of the lease and memorandum. LSI's attorney demanded that Kudlik immediately pay all past-due amounts in full, that he make all future payments on time, and that he pay $200 in attorney fees pursuant to the lease and memorandum. LSI's attorney informed Kudlik that if he did not cure the existing defaults and thereafter make timely payments, LSI would pursue its eviction remedies. Kudlik told LSI's attorney that he would call him back to discuss the matter further. Kudlik never called back.

On August 19, 1993, Kudlik paid the June 1993 rent to an escrow agent. The next day, upon learning of Kudlik's failure to pay the

July and August rent, LSI served Kudlik with a notice to quit. On August 23, 1993, LSI again served Kudlik with a notice to quit, demanding payment of all past-due rent.

Kudlik failed to pay the amount owing or to vacate the premises. On August 27, 1993, LSI filed its complaint. On September 2, 1993, the trial court entered an Order Regarding Possession Bond. That same day and again on September 4, 1993, LSI served Kudlik with a Notice of Filing of Possession Bond and of Remedies Available to Defendant. Kudlik requested a hearing within three days after service.

On September 3, 1993, Kudlik filed a written Tender of Performance to Plaintiff. LSI objected to the "tender" on the grounds that it was not a remedy or right available to Kudlik under Utah's unlawful detainer statute, and that it did not include an amount for the September rent then due, the accrued interest on the past-due amounts, and the attorney fees and costs. The trial court held a hearing on the possession bond issues on September 8, 1993, and at that hearing LSI's attorney learned that Kudlik had delivered a check a few days earlier to the escrow agent amounting to two month's rent. LSI objected to the payment and had the escrow agent return the check. Despite this objection, LSI's attorney indicated that LSI would still allow Kudlik to cure the defaults and remain in possession of the premises, if done so within the time period allowed by the unlawful detainer statute. The trial court entered an order providing that in order for Kudlik to remain in possession of the premises, he must pay the rent, late fees, and interest owing to LSI, and make a partial payment of attorney fees by September 13, 1993.[1]

Kudlik failed to make the payments, and on September 20, 1993, the trial court held another hearing and determined that LSI had not waived its right to timely performance under the lease and memorandum and that Kudlik had been in unlawful detainer of

the premises since August 27, 1993. Accordingly, the trial court ordered Kudlik to restore the premises to LSI, and ordered him to pay the past-due rent, treble rent from August 27, 1993 to the date of the September 20, 1993 hearing, LSI's attorney fees and costs, and postjudgment interest.

## ISSUE

The sole issue raised on appeal is whether the trial court improperly concluded that LSI's acceptance of late rent payments for four months did not constitute waiver of LSI's right to insist on strict compliance with the payment terms of the parties' lease agreement.[2]

## ANALYSIS

Kudlik claims that LSI's acceptance of late rental payments for four months constitutes a waiver of LSI's right to insist on strict compliance with the terms of the lease. The elements of waiver consist of: "(1) an existing right, benefit, or advantage; (2) knowledge of the existence of that right, benefit or advantage; and (3) an intention to relinquish the right, benefit, or advantage." *Pasker, Gould, Ames & Weaver, Inc. v. Morse*, 887 P.2d 872, 876 (Utah App.1994); *accord Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 939–40 (Utah 1993).

Kudlik is not challenging the factual determinations made by the trial court. Rather, Kudlik is challenging the trial court's determination that the given facts do not amount to waiver of LSI's right to strict compliance. Over time, our courts "appeared to have developed hopelessly inconsistent elaborations on the basic statement of waiver principles." *State v. Pena*, 869 P.2d 932, 938 (Utah 1994). The supreme court "acknowledged that fact as well as the futility of attempting such elaborations." *Id.* at 938. Accordingly, the court "stripped the statement of the law back to its most basic form and told the trial

---

1. Although the unlawful detainer statute specified the cure deadline as September 8, 1993, the parties and trial court agreed that Kudlik could have five extra days to make the payment.

2. Kudlik also asserts in his brief that LSI should be estopped from demanding prompt rent payments. However, at oral argument, his attorney conceded that only the waiver doctrine was properly at issue.

courts to apply it." *Id.; accord Soter's,* 857 P.2d at 942.

The net effect is that the doctrine of waiver is a " 'highly fact-dependent question, one that we cannot profitably review de novo in every case because we cannot hope to work out a coherent statement of the law through a course of such decisions.' " *Trolley Square Assocs. v. Nielson,* 886 P.2d 61, 65 (Utah App.1994) (quoting *Pena,* 869 P.2d at 938). Thus, we now grant very broad discretion to the trial court's application of legal propositions to the facts in waiver cases. *Pena,* 869 P.2d at 938.

The trial court interpreted LSI's actions as not waiving its right to insist on strict compliance with the lease and memorandum provisions requiring the prompt payment of rent. For approximately eighteen months Kudlik paid his rent on time. However, when Kudlik failed to make the rent payment for two months in 1993, LSI contacted its attorney, and LSI and Kudlik entered into the memorandum under which Kudlik agreed to cure the existing rent defaults and make timely payments thereafter under the lease. Kudlik made the past-due payments but was several days late in paying his March, April, and May rent. During this time LSI tried to get Kudlik to make the payments on time.[3]

Kudlik failed to make the June, July, and August payments. In August, LSI's attorney contacted Kudlik twice and informed him that LSI continued to insist on strict performance pursuant to the lease and memorandum. Specifically, LSI's attorney demanded that Kudlik immediately pay all past-due amounts for June, July, and August, and make all future payments on time, plus pay attorney fees incurred up to that point. LSI's attorney informed Kudlik that if he failed to cure the defaults and thereafter make timely rental payments, LSI would pursue its eviction remedies. Kudlik said he would get back with LSI's attorney but never did.

On August 19, 1993, Kudlik paid rent for June but not for July and August. The next day, upon learning of Kudlik's failure to make the July and August rent payments, LSI served Kudlik with a notice to quit.

■ We find it within the trial court's broad discretion to conclude that LSI did not waive its right to receive timely rent payments. From these facts the trial court could reasonably conclude that LSI's acceptance of the four late payments was not a routine practice and was not without objection. During the period of these four payments, LSI made repeated efforts to secure the payments on time. The trial court could reasonably determine that LSI did not intentionally relinquish its right to timely rental payments. Rather, the court interpreted LSI's behavior as a consistent attempt to resolve the dispute and reach an agreement concerning the late rental payments without evicting Kudlik at the first sign of trouble.[4]

■ Further, the memorandum contains a nonwaiver clause, which provides:

Any waiver by any party hereto of any breach of any kind or character whatsoever by any other party, whether such waiver be direct or implied, shall not be construed as a continuing waiver of, or consent to, any subsequent breach of this Agreement on the part of the other party.

This nonwaiver clause provides additional evidence that LSI did not intend to waive its right to strict performance under the lease.[5]

Based on these facts, we cannot say that the trial court abused its discretion in refus-

---

3. The testimony from the record stated that "Living Scriptures had to bird dog Mr. Kudlik over that period of months to make the payments that he agreed to in the memorandum of understanding, plus the payments he was obligated to under the lease."

4. Kudlik also claims that LSI accepted rent payments for July and August when he paid the escrow agent the amount during the unlawful detainer proceedings. Thus, Kudlik asserts that because LSI accepted a payment after the default proceedings had commenced, it waived its right to claim default of the lease. *See Woodland*

*Theatres, Inc. v. ABC Intermountain Theatres, Inc.,* 560 P.2d 700, 702 (Utah 1977). However, it appears that LSI did not actually accept the July and August rent payments. First, LSI returned the check to Kudlik's attorney. *See Shoemaker v. Pioneer Invs.,* 14 Utah 2d 250, 381 P.2d 735, 736 (1963). Second, the check was drawn on an account containing insufficient funds. *See id.*

5. LSI asserts that the nonwaiver provision in the memorandum completely bars Kudlik's claim of waiver. However, we conclude that the presence of a nonwaiver provision is relevant, but not

ing to find that LSI waived its right to prompt payment.

LSI also asks this court to award LSI the costs and reasonable attorney fees incurred in responding to Kudlik's appeal. At trial, LSI was awarded attorney fees and costs pursuant to the lease. "A party who was awarded attorney fees and costs at trial is also entitled to attorney fees and costs if that party prevails on appeal." *Wade v. Stangl,* 869 P.2d 9, 13 (Utah App.1994). Thus, LSI is entitled to attorney fees and costs on appeal.

## CONCLUSION

We affirm the trial court's determination that LSI's acceptance of late rent payments for four months did not constitute waiver of LSI's right to insist on strict compliance with the payment terms of the lease and memorandum agreement. We also remand the case to the trial court to award LSI reasonable attorney fees and costs incurred on appeal.

BENCH and BILLINGS, JJ., concur.

dispositive in our determination of whether LSI has waived its rights under the lease.

There is substantial authority against giving literal and full effect to nonwaiver provisions; courts have concluded that they too may be waived. *Dillingham Commercial Co. v. Spears,* 641 P.2d 1, 7–8 (Alaska 1982); *Entrepreneur, Ltd. v. Yasuna,* 498 A.2d 1151, 1163–64 (D.C.Ct.App. 1985); *Summa Corp. v. Richardson,* 93 Nev. 228, 234, 564 P.2d 181, 184–85 (1977); *Easterling v. Peterson,* 107 N.M. 123, 124, 753 P.2d 902, 903 (1988); *Soltis v. Liles,* 275 Or. 537, 543, 551 P.2d 1297, 1300 (1976); *Calhoun v. Universal Credit Co.,* 106 Utah 166, 146 P.2d 284, 286 (1944); *see* 3A Arthur L. Corbin, *Corbin on Contracts* § 763 (1960).

There is also authority upholding antiwaiver provisions regarding rent as a matter of law. *Giller Indus., Inc. v. Hartley,* 644 S.W.2d 183, 184 (Tex.Ct.App.1982). *See* Restatement (Second) of Property § 12.1 cmt. c, illus. 4 (1976).

Still other cases give varying degrees of weight to the nonwaiver clause, but do not necessarily rule out a finding of waiver. *E.g., Riverside Dev.*

*Co. v. Ritchie,* 103 Idaho 515, 522, 650 P.2d 657, 663–64 (1982) (viewing nonwaiver clause as one factor to consider in waiver determination); *S.H.V.C., Inc. v. Roy,* 188 Conn. 503, 450 A.2d 351, 353–55 (1982) (relying heavily on nonwaiver clause, but with dissent advocating remand for hearing in which "contract's nonwaiver clause would be relevant but not dispositive"); *M.J.G. Properties, Inc. v. Hurley,* 27 Mass.App.Ct. 250, 537 N.E.2d 165, 166–67 (1989) (holding that existence of antiwaiver clause is one factor to examine in determining question of waiver); *Jefpaul Garage Corp. v. Presbyterian Hosp.,* 61 N.Y.2d 442, 474 N.Y.S.2d 458, 459–60, 462 N.E.2d 1176, 1178 (1984) (finding nonwaiver provision as element to consider).

In keeping with our supreme court's effort to strip the statement of waiver law back to its most basic form and its determination to give trial courts discretion to apply that law, *see Pena,* 869 P.2d at 938, we believe the best approach is to view the existence of an antiwaiver provision as merely one factor to consider in determining whether a party has waived its rights under the agreement.