COLUMBIA AIRWAYS, Inc., v. STEVENS.

No. 5158.   Decided October 5, 1932.   (14 P. [2d] 984.)

*Dey, Hoppaugh, Mark & Johnson* and *Marks, Brady & Acheson,* all of Salt Lake City, for appellant.

*Morris & Callister* and *H. Hartland Halliday,* all of Salt Lake City, for respondents.

FOLLAND, J.

This is an action in claim and delivery to recover an Eaglerock airplane, factory No. 800, of the alleged value of $2,500. The plaintiff, in its amended complaint, alleged it was the owner and entitled to possession of the airplane; that defendant, on March 10, 1930, called at the hangar of appellant and there said to certain of its officers that he had bought a note theretofore given by plaintiff to Ray L. Peck, and demanded payment of the note on or before March 15, 1930; that on March 14th the plaintiff tendered defendant $538.38, the amount due on the note, but that defendant refused to accept the amount tendered without objecting to the sufficiency, form, or manner of tender or the amount of money tendered; that plaintiff renewed and kept good the tender made, but that defendant refused to accept the money tendered and refused to deliver possession of the airplane. Plaintiff also alleged damages and prayed for possession of the airplane or its value and damages for its detention. Defendant's answer is a general denial with the allegation that Ray L. Peck, on June 1, 1929, bought the airplane in question from the Alexander Aircraft Corporation and on March 10, 1930, sold it for a valuable consideration to the defendant, who took possession on that date and has ever since been and now is the owner.

The cause was tried to the court without a jury. The trial court made findings and entered judgment in favor of defendant and dismissed plaintiff's complaint. From this judgment plaintiff appeals, and by its assignments of error challenges several of the findings as not supported by the evidence, and the conclusions of law and judgment as not supported by the findings or the evidence. Error is also assigned as to several of the court's rulings on the admission of evidence.

The facts out of which this case arose are the following: In June of 1929 Clair O. Brunner and Claude L. Luke, who were doing business at the Salt Lake Municipal Airport under the name of Aeromotive Service, purchased the Eagle-

rock airplane in question from Ray L. Peck,, who was the local dealer for the Alexander Aircraft Corporation of Colorado. Previous to that time Brunner and Luke had bought another Eaglerock plane on which they owed Peck the sum of $975. This plane had been damaged in a crash, and Peck was anxious to obtain payment of the amount due. The purchase price of the new plane was $3,000. That amount was paid in three installments on June 12, 19, and 21, after which the new plane was delivered to Brunner and Luke, but the bill of sale was retained by Peck. On July 1, 1929, shortly after delivery of the plane, Brunner and Luke, not having paid the balance of $975 due on the first plane, signed a title retaining note on the new plane reciting a total consideration of $3,000 with a down payment of $2,025. The balance was to be paid $500 on August 1, 1929, and $475 on September 1, 1929, with interest at 8 per cent per annum. No payments were made on the due dates specified, but payments were made as follows: $75, July 2; $225, July 22; and $175, October 3, 1929. The entire balance was due September 1st, but Peck accepted $175 on October 3d and at different times thereafter requested the payment of the balance due, but at no time did he demand or attempt to take possession of the airplane. On February 20, 1930, Peck assigned his note to the defendant S. T. Stevens and surrendered all title and claim to the airplane to him. Both Peck and Stevens were licensed pilots, and each was employed by plaintiff as a pilot, and each had, in the course of such employment, used the plane in question. Plaintiff's business was that of carrying and training students for air service. The partnership of Brunner and Luke was, after the giving of the note in question, incorporated under the name of Aeromotive Service, Inc., and later, in November, 1929, this corporation consolidated with another corporation under the name of Columbia Airways, Inc., which bought all the assets and assumed all the liabilities of Aeromotive Service, Inc. Stevens made no mention of the fact that he was owner of the note until March 10, 1930. On that day

he had been flying the plane as a pilot for plaintiff. When he landed with the last student for the day, instead of returning the plane to the hangar of plaintiff, he taxied it to the hangar of another company. He took possession without any notice or demand on plaintiff. After he had done so, he went to the office of plaintiff and there announced to Brunner and C. C. Mead, both officers of plaintiff company, that he owned the note, had title to the plane, and had taken possession of it, and that he had to have the money plaintiff owed him on or before March 15th. There is conflict in the testimony as to just what was said in this testimony as to just what was said in this conversation. Stevens testified as follows:

"Q. After that what did you do with respect to your action? A. I went to the office of the Columbia Airways and told them, after I pulled the note out of my pocket and held it where Mr. Brunner could reach it, I told them that I had title to that airplane; that I had taken possession of it, and that I had to have the money, the amount they owed me, by the 15th of March. Mr. Brunner stated that I did not have to do that to get my salary. I stated I figured I did, anyway, Mr. Brunner stated: 'You mean. if we pay you the amount that is due you for salary and the amount that is due on that note, we can buy it back at that price by the 15th?' I said: 'Yes.' Mr. Brunner asked me if I was going to tie them up during that time. I said that I would take their students, if they had any at $17.50 an hour if they did not buy back the ship; and $6.50 an hour if they did. He then asked me who would take care of the ship at that time, mechanically. I answered that I would take care of it; and he asked me again if I would sell it back for the amount they owed me, including the amount they owed me for salary and the amount due on the note, by the 15th, and I stated Yes. The 'phone rang just then, approximately five o'clock. Mr. Peck was on the phone, and I had an apointment with Mr. Peck. Mr. Kemp was waiting for me outside; and I went in to town, to Mr. Peck's office at the Service Garage."

Brunner testified as follows:

"Q. Coming down to March, do you recall some conversation with Mr. Stevens, the defendant in this action? A. Mr. Stevens, he was a pilot in our employ; he was training students for us. He walked into the office on the evening of March 10th, and stated that he held

Mr. Peck's note, and that he wanted payment for that note on or before the 15th day of March. I asked Mr. Stevens at that time what he intended to do with the plane, and he said he was going to retain the plane. I then asked him what we would do for the instruction of our students, and he made the statement that he would go ahead and instruct our students, the same as he had done in the past, and that if we paid him his $538.00 on or before the 15th of March, that he would only charge us for his flying time. On the other hand, if we did not he would charge us $17.50 per hour for training our students in that plane.

"Q. Was there anything further said at that time, that you recall? A. That is all."

Mead testified he was present at the time of the conversation and was asked if Mr. Stevens said "that you could buy back this airplane for the amount due on the note plus the amount of his wages." To this question he answered, "No."

Plaintiff, on March 14th, made a tender to Stevens at the Utah State National Bank of $538.38, the amount conceded to be due and owing on the note, including principal and interest, but this tender was refused because it did not include the additional amount claimed by Stevens as wages.

The contention of defendant was and is that he rightfully repossessed the plane because of default of plaintiff and thereupon became the absolute owner; that by the conversation of March 10th the parties had entered into an agreement whereby he agreed to sell and plaintiff agreed to buy the airplane for $941, the amount due on the note and for wages, which amount was to be paid on or before March 15th. The plaintiff failed to tender or pay the sum of $941, and, according to defendant's contention, it then, as now, had no interest in the plane nor any right to repurchase it.

Appellant's position was and is that Peck, by accepting payments on the note after the due date thereof and by insisting on payment of the balance due by his repeated demands after the note became due, thereby waived strict performance of the contract, and that neither he nor his assignee, Stevens, could thereafter forfeit the amounts paid and lawfully repossess the airplane without first giving

plaintiff notice of intention so to do and a reasonable oppor-
tunity to pay the balance due, and further, that the notice
given by Stevens on March 10th that he must have his money
by March 15th extended the time to the latter date within
which the plaintiff might pay the balance due under the con-
tract and be entitled to own and possess the plane; that,
when the full amount due on the note was tendered on March
14th, plaintiff became the owner and entitled to the pos-
session of the property.

The rule of law applicable is stated in 1 Mechem on Sales,
§ 609: "The law has no interests of its own to subserve in
insisting upon forfeitures or the other results of default.
The remedies it gives are for the benefit of the vendor, and
he may waive them if he will. He may do this, more-
over, either expressly or by implication, and as the
results of default more often work hardship to the
buyer than to the seller, the law looks with complacence at
least upon those acts of the vendor which may fairly be con-
strued as indicative of his intention not to insist upon a
forfeiture of the buyer's rights. If, therefore, the seller,
notwithstanding the default, does not avail himself of his
appropriate remedy, but so acts as to reasonably warrant
the inference that he regards the buyer's rights as still sub-
sisting, he will be deemed to have waived the default, and
he will not be at liberty to declare a forfeiture until he has
in some way put the buyer, whom he has thus misled, in the
attitude of a fresh default."

This undoubtedly states the rule supported by the weight
of authority and the law as announced by this court. *Kohler*
v. *Lundberg,* 54 Utah, 339, 180 P. 590; *Munson* v. *A. & H.*
*Inv. Co.,* 62 Utah, 13, 218 P. 109, 111; *Pease* v. *Teller Cor-*
*poration,* 22 Idaho, 807, 128 P. 981; 24 R. C. L. 480; 2 Will-
iston on Sales (2d Ed.) 1139; and Estrich on Installment
Sales, § 311, page 628.

Respondent, in his brief, does not dispute that the above
is a correct statement of the law, but contends that this rule
is not applicable to the facts of the case. He said: "Here

there was no extension of time of payment granted either expressly or by implication. Vendee at no time was lulled into security by any statement or act of Peck or the respondent. On the contrary Peck repeatedly insisted upon a strict compliance with the contract by demanding payment."

This court said in *Munson* v. *A. & H. Inv. Co.*, supra: "It also appears that the monthly installments previously maturing had been paid to and accepted by the defendant company after the dates on which they were payable, according to the contract. This fact imposed upon defendant company the necessity of giving notice and opportunity to pay before a forfeiture could be claimed."

It may be that neither Peck nor Stevens gave any express extension of time for payment of the note, at least prior to March 10th, but the implications are strong that an extension was intended. The conduct of the vendor sufficently shows an intention to waive the strict performance of the contract and to receive further payments. Appellant had paid all but $500 on a $3,000 obligation. The airplane was at the time conceded by respondent to be worth $1,500 and claimed by appellant to be worth $2,500. The vendor had the right, under the terms of the contract, on August 1st and again on September 1st, to retain the money paid as forfeited and retake possession of the plane. If he retook possession, the contract provided he must either sell it and credit on the note the amount received at the sale, or he might retain the plane and credit on the note the true value thereof. This he did not do, but continued to press appellant for payment of the money due, and on October 3, accepted payment of $175. After that date he made demand, not for possession of the plane, but for payment of the amount due. The contract itself provides for interest at the rate of 8 per cent per annum to be paid on the balance due, not only before but also after maturity. This provision indicates that the time fixed in the contract for payment might be extended and interest charged

after maturity. *Pease* v. *Teller Corporation, supra.* We think it clear that the vendor waived default and was therefore under the necessity of giving notice and an opportunity for payment before a forfeiture and repossession could be claimed. When respondent took possession of the plane on March 10th, he did so wrongfully, and plaintiff was entiled to possession.

The court made no finding with respect to the issue raised in the complaint on the question of tender of the money due on the note. Findings should have been made on this question. The evidence shows conclusively that a ■ tender of $538.38 was made by appellant to respondent on March 14th; that this tender was renewed on March 15th and has been made good by payment of that amount into court for the use and benefit of the defendant. It is conceded that this was the correct amount due as principal and interest on the note. Tender was refused because the sum of $941 was not tendered, which sum includes respondent's claim for wages in addition to the amount due on the note. Appellant was not required to tender more than was due on the note to entitle it to its rights under the contract. *Pease* v. *Teller Corporation, supra.*

The only construction consistent with the law which we can place on the demand respondent made on the officers of appellant corporation on March 10th is that he thereby demanded payment of the principal and interest due on the note to be made on or before March 15th. When ■■ tender was made of the whole amount due on March 14th, appellant became entitled to possession and to the title to the property. Estrich on Installment Sales, § 278, page 571; 24 R. C. L. 480; *People's Furniture & Carpet Co.* v. *Crosby,* 57 Neb. 282, 77 N. W. 658, 73 Am. St. Rep. 504; *Pease* v. *Teller Corporation, supra.* It follows that if respondent had no right to forfeit the contract and respossess the plane on March 10th he was then in no position to contract for a resale of the property. The court made findings to the effect that there was an agreement made by appellant

to buy back the airplane for $941. The making of such a finding is assigned as error on the ground that it is not supported by the evidence. We have heretofore set forth in full the testimony of the witnesses to the conversation out of which it is claimed this agreement arises. We are satisfied that no such agreement can be made out of that conversation. Stevens testified that Brunner asked if what he meant was "if we pay you the amount that is due for salary and the amount due on that note we can buy it back at that price by the 15th," to which Stevens answered "yes." Neither here nor anywhere else in the record is there any evidence that Brunner or any one else for the corporation agreed to buy the plane and pay $941 for it.

Because of this disposition of the case, it is unnecessary to pass on other questions raised by the assignments. The judgment of the District Court of Salt Lake county is reversed, and the cause remanded for a new trial; costs to appellant.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.