## PAXTON et al. v. DEARDON et al.

No. 5944.   Decided February 24, 1938.   (76 P. 2d 561.)

*J. D. Skeen* and *E. J. Skeen*, both of Salt Lake City, for appellants.

*Sam Cline,* of Milford, and *Cheney, Jensen, Marr & Wilkins,* of Salt Lake City, for respondents.

WOLFE, Justice.

This appeal and cross-appeal raise four questions: (1) Did the judgment in a previous action for forcible entry onto certain lands in Millard County, brought by the Paxtons against Deardon, decide the question as to which of them had the right to possession of those lands? (2) If not, could that question be raised in this suit which is an action by plaintiffs against Deardon as principal and the United States Fidelity & Guaranty Company as surety on the appeal bond given by Deardon on his appeal from a former judgment against him in the suit for forcible entry? (3) If the question could be raised in this suit, was the judgment of the lower court decreeing the right of possession in Deardon at the time of his forcible detainer correct? (4) If the right of possession was in Deardon at the time he forcibly entered said lands, did his failure to restore the said lands to the Paxtons after judgment in their favor in the forcible entry suit giving them damages and decreeing that they be restored to the said land until determination of the question of the right of possession give the Paxtons a right to damages because of such failure to restore for such period as Deardon withheld the restitution?

The consideration of these four questions somewhat interlocks. The suit for forcible entry brought by the Paxtons against Deardon grew out of the facts which were set out in the report of our decision on the appeal from a judgment in that case contained in *Paxton* v. *Fisher,* 86 Utah 408, 45 P. 2d 903. And this suit grew out of that suit.

In order to give continuity to the history leading up to this appeal, we shall briefly state the salient facts from the beginning. On March 15, 1934, the State Land Board, owner of certain lands in Snake Valley, West Millard County, known as the I. H. L. Ranch (and which lands are here-

after so designated), consisting of about 1,200 acres, leased said ranch to the Paxtons for a term expiring December 31, 1934. Since issue is made as to whether the State Land Board had the right in event of sale to terminate said lease or at least give possession to the purchaser, we herewith set out the provisions in question:

"Sixth: It is further understood and agreed between the aforesaid parties, that the party of the second part hereby agrees to permit the party of the first part, or its authorized agent to enter upon the property, at any time for the purpose of showing same to any prospective purchaser; if the property is sold or leased and should the purchaser or lessee desire to go on to the property and prepare same for planting after the current year's crop is harvested, the lessee agrees to give such permission in order that a crop may be planted and harvested for the following year.

"Seventh: It is further understood that should the property be sold during the term of this lease, and the said party of the second part has same planted to crops and should the purchaser desire to take possession before said crops are harvested by the party of the second part, the party of the second part shall be reimbursed for the value of said crops or to be permitted by the purchaser to enter upon the property and harvest same."

Reference will later be made to these provisions. On April 23, 1934, the State Land Board executed and delivered an agreement of sale to the Deardons. Prior to the delivery of such agreement, the Land Board notified the Paxtons, the lessees, that it had arranged to sell the land and, in accordance with its reserved right, elected to cancel the lease, and at the same time notified said lessees that it would return to them the full consideration of $600 cash paid and $1,200 in promissory notes. The same were returned to said lessees. During the absence of the lessees, Deardon moved in the house and brought 400 head of horses and cattle on to the premises. He drove Paxton's cattle off the ranch and into another pasture.

Paxton brought an action for forcible entry, obtained a judgment for $271, which under the statute was trebled to the sum of $813. The judgment further specified that the

defendants "were guilty of forcible entry on said premises and on the 30th day of April 1934, the said defendants having entered upon said real estate unlawfully, after plaintiffs made written demand upon them for surrender of the premises thereof, for a period of three days refused to surrender the same to said plaintiffs as the former occupants thereof and thereupon the defendants became and were guilty of forcible detainer of said premises." The judgment, in addition, decreed "that the plaintiffs be and they are hereby restored to the peaceable, undisturbed and exclusive possession of said premises," and further decreed "that a writ of assistance be issued forthwith to the sheriff of Millard County directing said sheriff to remove the said defendants, their livestock and property of every character from said premises and put the plaintiffs in peaceable and exclusive possession thereof."

The defendants in that suit, the Deardons, appealed to this court. We affirmed the judgment. *Paxton* v. *Fisher, Sec'y of State Land Board, et al.,* 86 Utah 408, 45 P. 2d 903. To keep possession of the premises, the Deardons, defendants in that suit, gave an appeal bond executed by one of the defendants in this suit, the United States Fidelity & Guaranty Company. That bond recited, among other obligations, that the surety undertook to pay "the value of the use and occupation of said property and premises from the time of appeal until *delivery of possession thereof to said plaintiffs* and will pay all damages justly accruing to said plaintiffs during pendency of this action, in all not exceeding the sum of Five Thousand Dollars. * * *" (Italics supplied.)

The plaintiffs in this suit, the Paxtons, sue the defendant Deardon for a total judgment of $13,769 and the defendant United States Fidelity & Guaranty Company for $5,000 of this amount. The complaint is founded on a claim that, since the Deardons refused to surrender the premises as required by the judgment in the forcible entry suit, plaintiffs may collect the value of the forage which said land

would have produced from the 10th day of May, 1934, the date to which damages had been awarded them by the $271 judgment, to December 31, 1934, the date of the expiration of the lease, alleged to be $4,266. In addition, plaintiffs prayed for the loss of value to their stock because of alleged loss in weight due to insufficient feed, in amount $2,880; in addition, the sum of $805 for the death of cattle; in addition, $5,818 for crops which, so it was alleged, said land would raise; the whole amounting to $13,769. Thus it appears that plaintiffs sue on the claim that they had the right of possession from May 10, 1934, to December 31, 1934, based, as we understand their contentions, on the theory that the lease was still in force and that they had the right of possession under it and on the theory that at all events Deardon and his surety were responsible for all damages during the period the land was withheld from them after judgment in the forcible entry suit decreeing restoration of possession.

The defendants answered that plaintiffs had no right of possession because the right of the lessees was terminated under the provision of the lease above set out giving the Land Board the right to terminate in case of sale; that the damages because of forcible entry had been fully paid as trebled; and that such was all the damages to which plaintiffs were entitled.

The lower court decided in favor of defendants on the contention that the lease by its terms could be terminated; that it had on April 23, 1934, been terminated by the Land Board because of a sale to the defendants and the plaintiffs were notified, that in the forcible entry suit, No. 2912, no evidence as to the right of possession was introduced, and that the inquiry therein was confined to the peaceable possession by plaintiffs and the forcible entry and detainer by defendants, and that said suit was not res adjudicata as to the issues raised in the present suit. The court, however, assessed $1 nominal damages because of failure of defendant Deardon to give possession as required by the judg-

ment in the forcible entry suit, No. 2912. This judgment carried costs, and from it defendants cross-appeal. Plaintiffs appeal from the judgment denying substantial damages.

We conclude as to the first question set out at the threshold of this opinion that the lower court was correct in deciding that the judgment in suit No. 2912 did not decide between the Paxtons and Deardon who had the right of possession. The parts of that judgment above set out show that it decided and gave damages only for a ■ forcible entry by the Deardons and their detainer to May 10, 1934. In the decision of this court affirming that judgment, both the prevailing and concurring opinion specifically hold that that action was to collect damages for an unlawful entry, regardless of whether Deardon had the right of possession. A reading of that opinion will disclose that we held the forcible entry and detainer statute. Rev. St. 1933, 104-60-1 et seq., a police measure requiring any one claiming possession of property not to obtain it forcibly or in the absence of the occupier if the latter had peaceably occupied within five days preceding the unlawful entry. Such statute was held to be purely for the purposes of keeping the peace by requiring persons who claimed property against an occupier, or who detained property from one formerly in peaceable occupancy, to resort to the law to regain or hold the property rather than take the law into their own hands. It is not necessary at this time to determine whether a mere trespasser, not holding under color of right, has the right after five days' occupancy to require the one entitled to possession to resort to the statute. In case No. 2912, plaintiffs, the Paxtons, were not mere trespassers. They held under color of right. And to show that fact it was proper to introduce the lease. But the question of whether the lease had been terminated and who had the right of possession was expressly reserved from decision, both in the lower and in this court. Consequently, such fact is not res

adjudicata in this case. *Pearl* v. *Garlock*, 61 Mich. 419, 28 N. W. 155, 1 Am. St. Rep. 603.

We think the question of who had the right of possession on the 29th day of April, 1934, as between the Paxtons and the Deardons, not only could be but, as a proper defense, was required to be raised in this case. The theory of plaintiffs in this suit is that they had the right of possession and that defendant Deardon withheld it and that they are entitled to damages for such withholding. If it never was before decided who had the right of possession, the only way to meet their claim was to show that they did not have the right of possession but that Deardon did. Since the right of plaintiffs to recover against the surety depends upon their proving that they had the right of possession as against its principal and that the latter withheld such possession and that they were damaged thereby, both Deardon, the principal, and the bondsman could defend on the issue that plaintiffs had no such right of possession. This issue is the very heart of this suit. All the cases cited by plaintiffs on the propositions that the judgment of the appellate court is conclusive not only as to parties but as to sureties on the appeal bond, and that in a suit on a supersedeas bond the defendants may not set up as a defense matters which have been res adjudicata, are not in point because the issues here raised were not adjudicated in suit No. 2912.

This brings us to the third question: Was the court correct in this suit in finding that the right of possession was in Deardon on April 29, 1934, when he unlawfully detained the premises? The lower court was correct in so deciding. Its decision depends on whether the Land Board had the right under the lease to terminate and whether in fact it did notify the plaintiffs of the termination. Under provisions sixth and seventh of the lease above set out, there is an implied right either to terminate in case of a sale or to give the purchaser possession. On either theory, Deardon, the purchaser, had the right to possession if the

Land Board notified Paxton that it intended to terminate. While the evidence is conflicting as to the conversations between Fisher, the Secretary of the Land Board, and Paxton at the time of making the lease, there seems ample evidence to support a finding that Paxton leased the ranch with that understanding and that the provisions of the lease showed such intention. The stipulations regarding the payment for crops sown but not harvested in case the purchaser desired to take possession reveal an unequivocal intention either to permit termination in case of sale or of at least putting the purchaser in possession if he desired to take possession. After Deardon's action in going on the ranch, there can be but little doubt that he desired to possess himself of the land he bought. Likewise, there is ample evidence that prior to his going thereon the Paxtons were notified of the sale and that the purchaser desired possession, both by a telephone call from Fisher and a letter dated April 24, 1934, so notifying him. We therefore conclude that the finding of the lower court that defendant Deardon had the right of possession at the time he entered in plaintiffs' absence on April 29, 1934, and at the time he unlawfully detained the premises, was correct. Plaintiffs, however, maintain that Deardon should have surrendered possession in compliance with the decree of May 12, 1934, decreeing restitution.

Plaintiff's contention comes down to this: "Deardon had a right to the possession as against us, but in spite of that he should have, in compliance with the court's order, admitted us to possession so he could turn around and obtain his rightful possession from us and obtain damages for our detaining the land, but since he did not surrender to us possession when he had the right to it, he must, for the entire time he kept it but not beyond the life of the lease, pay us $13,769.00 in damages which we claim to have suffered for not being permitted to occupy land the right of possession of which was in him." The law

does not require useless acts, but, more than that, it does not so stultify itself.

The law says:

"As a part of the judgment in a forcible entry or forcible detainer action, the law puts the ousted party back in possession pending the determination in a proper manner as to who had the right of possession. But if it is afterwards found that all the while the other party had the right of possession, then the matter is settled and by that finding there is no necessity to restore the ousted ■ party who wrongfully claimed possession to occupancy; furthermore, the sole purpose of restoring him to occupancy until a determination of the question as to who had the right of possession is, and by the latter finding would have been, unnecessary. There is accomplished all that the purpose of such restoration was for."

After the issue was properly raised as to whether Deardon had the right of possession and it was determined that all the while he had it, then no right of plaintiffs was invaded. If no right was invaded, they did not suffer injury. Injury is the mother of damages. If they suffered no injury, they cannot obtain damages. *Alabama Power Co.* v. *Ickes,* 58 S. Ct. 300, 82 L. Ed. .... Furthermore, as contended for by defendants: At all events, the only damages for failure to restore occupancy to plaintiffs would be the value of the premises to them during such time as, had they remained in possession, it would take to legally turn them out if it transpired that defendant Deardon had the right of possession. Aand in a summary action this would presumably have been before the 10th day of May, 1934, up to which date plaintiffs have already recovered damages. Moreover, if plaintiffs had retained or been restored to possession, defendant Deardon would have been able to obtain damages for such detention. It would seem strange indeed then, under all these circumstances, to give any damages to plaintiffs for withholding of a possession to which they were never entitled and which, had they kept it, would have subjected them to damages.

In the case of *Douglas* v. *Cutlip,* 118 Okl. 21, 246 P. 392, 394, it was held that the right of Cutlip "to recover the

rental value of the premises pending the appeal must necessarily depend upon the *continued* right of possession." (Italics added.) Cutlip had sued Douglas for forcible detainer. It was attempted to show that, pending the appeal on this forcible entry suit, Cutlip had lost title by foreclosure and some one else was entitled to the rents. Such defense was made to a suit for damages against the principal and surety on the appeal bond. By the same reasoning, the right of the plaintiffs to recover in this case would depend upon their right of *continued* possession. If they never had any right of possession at all on April 29, 1934, it is difficult to see how they can prove damages in this case.

This would seem to answer the fourth question above propounded and make us conclude that the case must be reversed as to the $1 nominal damages in favor of plaintiffs.

The judgment of the lower court is reversed, with instructions to enter judgment against plaintiffs and in favor of defendants, no cause of action. Costs to respondents and cross-appellants.

FOLLAND, C. J., and HANSON, MOFFAT, and LARSON, JJ., concur.