## CURTZ v. PARK CITY CHIEF MINING CO. et al.

No. 6825.  Decided December 20, 1946.  (175 P. 2d 491.)

See 40 C. J. Mines and Minerals, sec. 579; 55 Am. Jur. 930; 36 Am. Jur. 301.

*Moyle, McKay, Burton & White,* of Salt Lake City, for appellants.

*H. G. Metos,* of Salt Lake City, for respondent.

CROCKETT, District Judge.

Another phase of this controversy was before the court in a case of similar title, 105 Utah 300, 142 P. 2d 163. Reference is made to the facts set forth therein. It is sufficient here to say that with respect to the issues raised by the pleadings in the case, it was determined that the defendant, former Park City Chief Mining Company, held the property in question, consisting of interests in certain mining claims, in trust for the plaintiff, Edgar Curtz.

In that decision it was indicated that there were two matters of controversy between the parties left unsettled by that proceeding.

First, that the defendant company had a lien on the properties in question for any amounts it had paid to discharge the debts of the estate of Rachel B. Urban, whence the plaintiff Curtz had derived his title, and Second, that that proceeding did not determine the rights of the parties, if any, existing under a certain contract executed April 2, 1937 between plaintiff and defendants' assignor.

The first problem above noted was dealt with thus: After the remittitur in the former case, pursuant to directions in the opinion, the District Court held a hearing on April 9, 1944, and the defendants' lien above referred to was determined to be $1,116.60. The court entered judgment April 25, 1944, decreeing that the defendant company held title to said property in trust for the plaintiff subject to a lien for that amount, still reserving any

determination of the rights of the parties under the contract. No appeal was taken from that judgment, and the amount of the lien is res adjudicata.

That disposes of the first problem above mentioned, and brings us to a consideration of the second; that is, the rights, if any, which the parties have under the contract referred to.

Plaintiff commenced this action on June 23, 1944 to quiet title to his interests in the said mining claims against the defendants. The defendant company set up the contract of April 2, 1937 by which defendants' assignor agreed to purchase, and plaintiff agreed to sell, plaintiff's interests in the properties mentioned. The defendant insists that the contract is in full force and effect, while plaintiff contends that the contract has been forfeited because of defendants' failure to comply with its terms, admitting and offering to pay the defendants' lien on the properties in the amount of $1,116.60. The lower court held in favor of the plaintiff and quieted plaintiff's title to his interests in the properties subject only to the payment of the amount of the lien.

The question for determination is whether or not there has been a forfeiture of the contract. The history of the dealings of these parties in regard to the contract is long and involved, and it would serve no useful purpose to delineate the details thereof in this opinion. In brief, it may be stated that after both parties had failed to timely perform certain things required of them by the contract, the parties made a new agreement on July 25, 1940, reciting in substance that if the plaintiff Curtz won a suit then pending against him involving the property, that the parties would recognize the obligations of the contract. He did win the suit and so notified defendants on June 17, 1942, and requested defendants to make the payments provided. This revived the essential portions of the contract; that is, that Curtz would show marketable title and that the defendants would pay the purchase price on terms specified. We are unable to agree that the previous conduct of the defendants had waived their right to require

Curtz to show marketable title. This was the essential thing they were to pay for and upon the revival of the contract they were entitled to require performance by the plaintiff before further payments became due. No payment was made and on July 8, 1942, plaintiff gave defendants further notice declaring all of the defendants' rights under the contract forfeited unless Curtz's portion of a $5,000 payment was made within 15 days. After this notice had expired, on July 28, 1942 plaintiff served notice on the defendant company requiring it to surrender possession within five days.

The plaintiff himself had not complied with the essential obligations of the contract and therefore was not in a position to declare a forfeiture. Even if he had been, under the facts of this case, where payments had been made and accepted which were at variance with the terms of the contract both as to the time and amount of payment, and where the entire contract had been in suspension by mutual agreement for a long period of time, we do not think the notices given were sufficient to work a forfeiture under the rules laid down in the cases of *Calhoun* v. *Universal Credit Co.*, 106 Utah 166, 146 P. 2d 284; *Columbia Airways, Inc.* v. *Stevens*, 80 Utah 215, 14 P. 2d 984; and *Kohler* v. *Lundberg*, 54 Utah 339, 180 P. 590.

The judgment quieting title in plaintiff is reversed.

Costs to appellants.

LARSON, C. J., and McDONOUGH, WADE, and WOLFE, JJ., concur.

PRATT, J., not participating.