LARSEN et al. v. KNIGHT.

(Two Cases.) Nos. 7465, 7514. Decided June 19, 1951. (233 P. 2d 365.)

See 17 C. J. S., Contracts, sec. 492. Conditional seller retaking property without process. 47 Am. Jur., Sales, secs. 951-953; 146 A. L. R. 1331.

*McKay, Burton, Nielsen & Richards* and *George M. Mc-Millan,* Salt Lake City, for appellants.

*Mulliner, Prince & Mulliner,* Salt Lake City, for respondent.

HOYT, District Judge.

This appeal involves two separate cases which were combined for trial and on this appeal. The appellants were plaintiffs in each case and the respondent was defendant. The points relied upon by plaintiffs in their brief in each

case are addressed solely to alleged errors in the court's conclusions of law. It is therefore deemed unnecessary to discuss the evidence or the facts except as shown by the trial court's findings. The one case was filed in Salt Lake County and will be referred to as the Salt Lake case. The other was filed in Summit County, which is in the same judicial district, and will be referred to as the Summit case.

The relevant facts as found by the trial court are as follows:

On or about April 15, 1948, plaintiffs as second parties and defendant as first party entered into a written contract by which defendant agreed to sell and plaintiffs to buy the fixtures and equipment theretofore used in operating a roadside refreshment place known as the Ski Inn, located in Parley's Canyon in Summit County, on U. S. Highway 30-40, about eighteen miles from Salt Lake City. The purchase price of fixtures and equipment was $12,500 of which $3,000 was paid at the time of execution of the agreement, $3,000 was to be paid June 15, 1948, and the balance in installments of $100 each month with interest at five per cent. Defendant also, by the same contract, leased to plaintiffs the building referred to as the Ski Inn for a term of ten years with an option to renew for an additional ten years. Rent was $125 per month, payable in advance, beginning May 1, 1948. Plaintiffs agreed to carry fire insurance on the buildings, fixtures and equipment in the total amount of $15,000, in favor of the defendant. Plaintiffs agreed to pay all expenses of operating the business and to maintain the building in a good state of repair. The agreement also contained the following clauses:

"2. Second parties shall have immediate and continuous possession of the said business and the aforementioned fixtures and equipment and also the right to operate said business and use said fixtures and equipment so long as Second Parties shall not be in default of any of the terms or provisions by them to be carried out or to be performed as hereinafter set forth.

"3. The title to the business and all property hereby sold and transferred shall be and remain in the First Party until all payments have been made by Second Parties as hereinabove provided  *  *  *.

"8. First Party agrees that he will install near the said Ski Inn, not later than the beginning of the 1948-49 ski season, a fully operable ski tow. It is expressly agreed, however, that none of the proceeds from such ski tow will go to the Second Parties.

"10. If the Second Parties shall fail or neglect to make any of the payments hereinbefore specified or breaches any of the covenants or conditions herein provided, First Party may, at his option, terminate the Agreement and may re-enter the premises and repossess all of the fixtures and equipment, retaining all sums theretofore paid by the Second Parties as liquidated damages for the use, rent, wear, tear, and depreciation of said items and the Second Parties hereby expressly authorize and empower the First Party, his agents, representatives, attorneys, and assigns so to do."

Pursuant to the contract plaintiffs took possession of the premises and equipment mentioned, and operated the business as a partnership. They paid the rent for May and June and insured the equipment for the sum of $6,500 but provided no insurance on the building. On or about June 15, 1948, defendant orally extended time for payment of the $3,000 then due on fixtures and equipment until July 15, 1948, and on or about August 9, 1948, defendant agreed with plaintiffs that he would accept $1,000 in part payment and would require no further payment on the fixtures and equipment until January 1, 1949. (The court's findings in the Salt Lake case are somewhat different upon this item, reciting that defendant agreed that if plaintiffs paid $1,000 cash and would make prompt payment of the arrears in rent and provide insurance coverage he would grant them until January 1, 1949, to pay the balance of $2,000 due on fixtures and equipment.)

Pursuant to said agreement plaintiffs paid to defendant $1,000 on or about August 9, 1948. They made no further payment on either the rent or purchase price of fixtures and equipment. Prior to the time of executing the contract with the plaintiffs, the defendant had entered into an agree-

ment with one A. L. Rudy to install a ski tow near the Ski Inn; but thereafter and shortly prior to August 28, 1948, defendant instructed Rudy not to install the ski tow. Defendant did not at any time prior to August 27, 1948, inform the plaintiffs that the ski tow would not be installed but on said date defendant notified the plaintiffs that no ski tow would be installed unless the rent and insurance premiums were paid. At the time of making the payment of $1,000 on August 9, plaintiffs expected defendant to perform his part of the contract respecting installation of the ski tow. Rudy was at all times ready and willing to install the ski tow before the ski season of 1948-49 when instructed to do so by the defendant. There is no finding as to whether any demand was made by plaintiffs for installation of the ski tow. On October 15, 1948, the insurance procured by plaintiffs on the fixtures and equipment was cancelled for non-payment of premium and thereafter no insurance was carried by plaintiffs on either fixtures, equipment or the building. The court further found that plaintiffs failed and were unable to pay expenses of operation of the Ski Inn after October 1, 1948, and were insolvent and notified defendant of this. The court also found that about September 15, 1948, it was mutually agreed between the parties to try to dispose of the property by sale to third parties and efforts to this end were made by plaintiffs and defendant. In December 1948 the water system at the Ski Inn froze and became useless, due, according to the court's findings, to plaintiff's failure to maintain the biulding. Plaintiffs remained in physical possession of the building, fixtures and equipment until about December 27, 1948, at which time they closed the Ski Inn for the winter. They boarded up the windows and securely locked and boarded the doors, and, according to the court's findings, at the time they left they intended to return and reopen the place and do business when weather permitted in the early spring. At no time did they intend to abandon either the real property or the personal property referred to

in their contract with defendant. While they were operating the inn the plaintiffs purchased from persons other than defendant silverware, china and equipment of the value on January 27, 1949, of $400. This property was in the building on that date. On January 12, 1949, defendant served upon the plaintiff Stoker the following written notice:

January 11, 1949.

"Messrs. Jack E. Larsen and Ed Stoker:

"Under date of April 15, 1948, you, and each of you, entered into a written agreement with the undersigned providing for the rental and occupancy of the premises known as the Ski Inn located in Parleys Canyon in Summit County, Utah, for a monthly rental of $125.00. Said agreement provided that in the event of failure to make the required payments or to comply with any of the other covenants and conditions of the agreement, the undersigned might at his option re-enter the premises.

"Since the execution of said Agreement you have only made two monthly payments, which payments amounted to $250.000 but have failed to make additional payments due, notwithstanding the fact that the undersigned has made repeated demands upon you for the payment thereof.

"By reason of your failure to make the payments hereinbefore referred to, you and each of you will take notice that under the terms of said agreement you, and each of you, have become and now are and are hereby declared to be tenants at will of the undersigned; and as such you, and each of you, are hereby required to vacate the said property heretofore referred to and to surrender possession thereof to the undersigned within three (3) days from the date of the service of this notice upon you, or in the alternative, to pay to the undersigned the total amount of rent due under said agreement, amounting to Eight Hundred Seventy-five and no/100 ($875.00) Dollars, and upon your failure so to do, legal proceedings will be instituted against you, and each of you, to recover possession of the said property.

"/s/ J. Rodney Knight
"J. Rodney Knight"

Defendant did not, at any time prior to said January 12, 1949, give plaintiffs any other written notice relative to either the real or personal property referred to in their

contract, and at no time did he institute legal proceedings to recover possession of either the real or personal property. On January 27, 1949, while the plaintiffs were absent, the defendant re-entered and took possession of the Ski Inn together with the fixtures, equipment and personal property therein. The court found that when the plaintiffs left the premises on December 27 the equipment therein became subject to damage by freezing and thawing and that the defendant re-entered in order to preserve and protect the property and that in April or May 1949 defendant expended $168 to restore the water system from damage suffered through plaintiffs' failure to maintain the same. The court further found that between January 27 and May 26 the plaintiffs intended to reopen and reoccupy the Ski Inn and

"that on May 26 plaintiffs were cleaning the premises until 11 p. m. preparatory to reopening same for business. That at 11 p. m. plaintiffs left the premises securely locked; that on May 27, 1949, during the absence of the plaintiffs the defendant, his agents and servants, broke into and upon said premises by breaking the doors and windows thereof, by circumstances of terror, and that defendant did enter the said building during the absence of plaintiffs. That on the 27th day of May, 1949, defendant, by and through his attorney, called the attorneys for the plaintiffs by telephone and told said attorneys for plaintiffs that defendant had taken over the Ski Inn and had taken defendant's brother and several professional football players to the Ski Inn and that defendant intended to open the place for business the following day and that if plaintiffs did not wish to have any violence, plaintiffs had better stay away from the premises. That, in said conversation, and thereafter, plaintiffs, through their attorneys, made oral demand upon defendant for possession of said real and personal property, and that possession was at all times refused."

The court further found that the plaintiffs had not at any time paid or tendered payment of the amounts due defendant under the contract except as hereinabove shown.

It now becomes necessary to refer to the pleadings of the parties in the two cases. On January 22, 1949, plaintiffs filed their complaint in the Salt Lake County action.

In that complaint plaintiffs set up their contract with defendant alleging failure of defendant to install the ski tow and alleged damage resulting to plaintiffs thereby in the sum of $10,000. Plaintiffs further alleged that they had not paid rent, because of defendant's failure to install the ski tow. They also set up other claims not material on this appeal. To this complaint the defendant filed answer and counterclaim admitting failure to install the ski tow and setting up as excuse therefor that plaintiffs had violated the terms of the contract by failure to pay rent and installments owing and that defendant was therefore relieved of obligation to install such ski tow and that defendant had so notified plaintiffs. It was further alleged that on or about September 15, 1948, plaintiffs notified defendant that they had made arrangements for installation of a ski tow by third parties and that defendant was thereafter under no obligation to install it, to which arrangement defendant agreed. Defendant counterclaimed for delinquent rent in the amount of $750, and damages for failure of plaintiffs to pay electric bills, and failure to maintain the water system and building and premises in repair. No demand was made in defendant's counterclaim for recovery of possession of the premises or the equipment and fixtures, but there was an allegation

"that pursuant to said agreement, defendant, on or about January 1, 1949, re-entered and repossessed said fixtures and equipment and terminated said agreement."

Plaintiffs filed a reply denying the affirmative allegations of the defendant.

On May 28, 1949, plaintiffs filed their complaint in the Summit County case. In this they set up the contract and alleged their possession and right to possession of the Ski Inn on May 26, 1949, and that on May 27, 1949, while plaintiffs were temporarily absent and had left the place securely locked, defendant removed the lock, broke the door and entered the premises and thereafter threatened plain-

tiffs with violence if they attempted to regain possession. Plaintiffs prayed for an order directing the sheriff to put them in possession and for an injunction restraining defendant from interfering with plaintiffs' possession. Thereafter on June 3, 1949, at a hearing at which both parties were represented, an order was made putting defendant in possession as receiver, until further order of the court. Defendant took possession as receiver under this appointment and thereafter arranged for operation of the Ski Inn. Defendant filed answer in the Summit case admitting the taking of possession and denying generally the other allegations of the plaintiffs and setting up affirmatively the contract with the plaintiffs and breaches by plaintiffs in failure to pay rent, to carry insurance, to keep in repair and to pay expenses of operation. Defendant further alleged that on or about December 20, 1948, plaintiffs

"abandoned the premises and thereby terminated said lease and agreement aforesaid. That by reason of plaintiffs' failure and refusal to carry out the terms of said contract, and by reason of their abandonment of said premises, on or about January 27, 1949, defendant re-entered said premises, after notice, and ever since said date has been in possession thereof, that said re-entry by defendant terminated said lease agreement and defendant thereby became entitled to said possession."

Thereafter plaintiffs by leave of court filed their amended complaint, reiterating the allegations of their original complaint and adding a cause of action alleging plaintiffs' right to possession of the fixtures and equipment described in the contract with defendant, together with the additional equipment purchased by plaintiffs, and alleged conversion by defendant of all such property on January 27, 1949. Plaintiffs also set up a third cause of action alleging their possession and occupancy of the premises until 11 p. m. of May 26, 1949, and that defendant thereafter in the night-time of said day broke into the premises by breaking the doors and windows and thereafter threatened plaintiffs with physical violence and by such threats of physical viol-

ence retained possession despite demand by plaintiffs for possession. Plaintiffs prayed for treble damages under the provisions of the forcible entry and detainer statute, Chapter 50, Title 104, Utah Code Annotated, 1943. Plaintiffs' third cause of action was thereafter amended so as to allege forcible detainer of the premises by defendant from January 27, 1949 to May 27, 1949, and thereafter up to time of trial, to plaintiffs' damage in the sum of $500 per month, and praying that such damages be trebled. To the amended complaint defendant filed answer admitting taking possession but denying other allegations and setting up the affirmative matters alleged in his answer to the original complaint.

After trial and entry of findings of fact as hereinabove set forth, the trial court made its conclusions of law in the Salt Lake case to the effect that by reason of plaintiffs' failure to pay rent, provide insurance, pay expenses of operation and by reason of their insolvency on October 1, 1948, defendant was excused and not obligated to install the ski tow; that by reason of plaintiffs' default and in order to protect and preserve the premises and equipment defendant's re-entry on the premises on January 27, 1949, was lawful;

"that on or about December 27, 1948, plaintiffs were delinquent in their rentals, closed said premises, neglected the same, thereby terminating said rental agreement as a matter of law."

The court further concluded that defendant was entitled to judgment for $168 damages for repair of the plumbing system and $750 rent and his costs and that plaintiffs were not entitled to damages for failure to install the ski tow. Judgment was entered January 7, 1950, in accordance with the court's conclusions.

In the Summit County case the court concluded:

"That by reason of violation and breach of contract, and in order to protect and preserve said premises and equipment from damage from the elements and from freezing, the re-entry by defendant upon

the premises on January 27, 1949, was lawful as to the real property. That by reason of violations and breach of contract the repossession by defendant of the personal property sold to plaintiffs by defendant under said contract was lawful."

The court further concluded that defendant was entitled to judgment of no cause of action on plaintiffs' first and third causes of action which were on the theory of forcible entry and detainer of the real property, but that plaintiffs were entitled to judgment against defendant for $400 for conversion of the personal property bought by plaintiffs from third parties which was not covered by the contract. Judgment was entered April 6, 1950, in accordance with these conclusions.

Errors relied upon by the plaintiffs in their brief on appeal are: (1) That in the Salt Lake case the court erred in failing to find that defendant's promise to install the ski tow was independent of and not conditional upon the promises of plaintiffs to pay rent and carry fire insurance; and that in any event plaintiffs' breaches did not justify defendant's non-performance relative to the ski tow; (2) That in the Summit County case the court erred in holding that defendant was not guilty of forcible detainer of the real property; (3) That in the Summit case the court erred in holding that defendant was not liable for conversion of the chattels covered by the contract.

In support of the first point, plaintiffs assert that on August 27, 1948, when defendant announced that he would not install the ski tow, plaintiffs were in default only in the amount of $250 rent and in failing to pay insurance premiums, and that they had paid $4000 on the purchase price of fixtures and equipment, $250 on rent and had expended $1,264.66 on permanent improvements and $758 for gravel, awnings, and a new deep freeze section. (The court made no finding as to these expenditures except that in the Salt Lake case the court found that plaintiffs had commenced construction of a patio and fireplace for the pur-

pose of extending the facilities of the Ski Inn, the cost of which is not found. The court found that defendant had not agreed to pay one-half the cost of these improvements and did not agree to allow an offset against rent on account of such improvements.) Plaintiffs argue that their defaults were trivial at the time the defendant instructed Rudy not to put in the ski tow and that on the other hand defendant could have had the ski tow put in without any expense whatever to himself, since Rudy was at all times ready and willing to install it. Plaintiffs further argue that the failure to have the ski tow installed destroyed their opportunity to operate the Ski Inn on a paying basis during the winter season. It is further argued that defendant himself treated the contract as still in force as late as January 1, 1949, since he sued and obtained judgment for rent to that date and also sued for damages resulting from freezing of the water system in December and for flooding of the premises in April 1949. It is further urged that defendant's damages for plaintiffs' failure at the time defendant cancelled his arrangement for installation of the ski tow were easily ascertainable and compensable and were minor in comparison to the magnitude of his breach.

In answer to plaintiffs' argument, defendant contends that the theory of independent promises was not raised by the pleadings nor urged during the trial, and that the case was tried on the plaintiffs' theory that they had a set-off against rent for improvements constructed and that defendant had waived all payments due under the contract until January 1. Counsel for defendant asserts that the court expressly found against plaintiffs on each of these issues, and they further argued that since plaintiffs were guilty of numerous breaches they are in no position to complain of defendant's failure to install the ski tow.

We are inclined to agree with counsel for plaintiffs that the mere fact that plaintiffs were guilty of the first breach should not prevent them from setting up their claims for

damages for non-performance of defendant's promise when he did not attempt to terminate the contract until after January 1, 1949. Defendant did not have the right to terminate his obligations under the contract as of August 27, 1948, and thereafter claim rent by virtue of the contract up to January 1, 1949. He could, under the terms of the contract and after due notice, have terminated it in toto while plaintiffs only were in default. But after default on his part he was not in a position to terminate it without adjudication of the plaintiffs' claims against him—unless the plaintiffs had waived defendant's breach or were estopped to assert it. A party insisting on a forfeiture must not be himself in default. 17 C. J. S., Contracts, § 407, page 896; 13 C. J. 608 n. 45.

In this case however the trial court found that on August 27, 1948, the defendant notified plaintiffs that the ski tow would not be installed unless the delinquent rent and insurance premiums were paid. There was no payment or tender of payment. The plaintiffs continued to occupy and operate the Ski Inn. They did not, so far as shown by the findings, make any demand for installation of the tow. On or about September 15, there were negotiations between plaintiffs and defendant relative to sale of the property and both parties endeavored to find a buyer. The defendant could have had the ski tow installed by Rudy without expense to himself. It appears probable that he would have done so if plaintiffs had made demand for it or had not allowed him to believe that they acquiesced in his cancellation of arrangements with Rudy. The court further found that plaintiffs were insolvent on October 1, 1948.

Do these circumstances show such a situation and such conduct on the part of the plaintiffs as to justify the trial court's conclusion that the defendant was excused from his promise to install the ski tow? Do they amount to a waiver or estoppel? We believe they do. A party claiming a right ought not to appear to acquiesce in non-performance by the other party until the time has

gone by for such performance and then claim damages. Without a tender of payment of the delinquent rent and insurance and without any demand for installation of the ski tow after being informed of defendant's cancellation of his arrangement with Rudy, it would be unjust to permit plaintiffs thereafter to recover damages alleged to have resulted from lack of such installation. We are further persuaded to this view upon a reading of the transcript of evidence, which fails to show any demand upon defendant for installation of the ski tow or any notification that he would be held liable for non-performance of his agreement regarding same. It also seems significant that plaintiffs did not in their complaint in either case ask that defendant be required to install the ski tow. They prayed for restitution of possession of the real and personal property and damages for loss of profits caused by lack of a ski tow but did not in either case demand its installation in preparation for the next skiing season. It should further be considered whether such a highly speculative thing as loss of profits could be a proper measure of damages. We cannot see how it would have been possible to establish what profits would have accrued to the plaintiffs through the installation of the tow. We think therefore that the proper measure of damages would have been the cost of installation. And since the plaintiffs were notified in August of defendant's decision not to have Rudy install the tow and there is no showing that there was not then ample time for plaintiffs themselves to have arranged for Rudy or some other party to have installed it, we think it would not have been just in any event to have allowed plaintiffs to recover damages based upon such an unascertainable thing as loss of profits. We believe that the trial court did not err in denying plaintiffs' claim for damages in the Salt Lake case. We also believe that it was not error to grant defendant judgment for rent to January 1, 1949. Plaintiffs continued to occupy and operate the place until late in December, and in the absence of some agreement or waiver on the part of the defendant relieving them from their obliga-

tion to pay rent the court could not disallow it. The judgment in the Salt Lake case should therefore be affirmed.

Turning now to the Summit County case, and to the plaintiffs' contention that the trial court erred in holding that the defendant was not guilty of forcible detainer of the real property, it must be noted that this court has repeatedly held that under our statutes relating to forcible entry and forcible detainer, even a rightful owner or a landlord entitled to declare a lease forfeited should not take the law into his own hands and proceed to recover possession by violence, or by entry in the nighttime or during the absence of the occupant of any real property. *Paxton* v. *Fisher,* 86 Utah 408, 45 P. 2d 903; *Woodbury* v. *Bunker,* 98 Utah 216, 98 P. 2d 948; *Buchanan* v. *Crites,* 106 Utah 428, 150 P. 2d 100, 102, 154 A. L. R. 167.

"In states having such statutes the prevailing view is that 'a landlord who is entitled to possession must, on the refusal of the tenant to surrender the premises, resort to the remedy given by law to secure it.' 45 A. L. R. 313, 316. If the landlord, contrary to the terms of such a statute enters by force without resort to legal process, he is by statute made civilly liable to the dispossessed tenant." *Buchanan* v. *Crites,* supra.

But if the defendant was guilty of a forcible entry or a forcible detainer, are the plaintiffs in a position in this case to complain of the failure of the court to so declare? Are they in a position to ask for judgment of restitution of possession? Or for damages, and if so what damages?

In both their first and third causes of action in the Summit County case the plaintiffs set up their contract with the defendant and alleged that it had not been terminated and that they were entitled to possession of the premises at the times of the alleged forcible entry and detainer. In their first cause of action they prayed for a writ of restitution of possession, for an injunction restraining defendant from interfering with their possession, and for such other relief as might be just

and equitable. On their third cause of action as amended they prayed for restoration of possession, for treble damages, and for such other relief as might be just and equitable. Damages alleged to have been suffered were $125 per month for the period from January 27 to May 27, 1949, (it being alleged that such was the reasonable rental value of the premises during that period) and $500 per month from May 27, 1949, until the date of trial (it being alleged that plaintiffs' reasonable profits would have been in excess of that amount).

It will be noted that the case was not restricted to a summary action for forcible entry or forcible detainer. The plaintiffs' right to possession under the contract was voluntarily put in issue by the plaintiffs. The answer of the defendant admitted the contract but alleged defaults by plaintiffs and termination of the contract and re-entry after notice by defendant. The issue of right to possession was therefore tried and adjudicated. It was found that plaintiffs were in default and that the defendant was entitled to re-enter and repossess the premises. Under these circumstances it is affirmatively shown that plaintiffs have not suffered any of the damages which they claim in their third cause of action. Likewise it is established that they are not entitled to restitution of possession. After the issue of right of possession is properly raised and decided against a plaintiff he is not in a position to demand that the court restore him to possession nor to grant him judgment for rental value of the property during a period in which he was not entitled to possession. As was said by the court in *Paxton* v. *Deardon,* 94 Utah 149, 76 P. 2d 561, 564,

"The law does not require useless acts".

In that case the plaintiffs sued the defendants for refusal of Deardon to surrender possession of a ranch property as required by a final judgment rendered in a previous forcible entry and detainer action. Plaintiffs claimed dam-

ages for deprivation of possession during the period while that action had been pending on appeal—Deardon having given a supersedeas bond and having retained possession pending the appeal. Defendants defended on the ground that the right of possession was not in issue and had not been adjudicated in the forcible entry and detainer action, and that throughout the period involved the defendant Deardon had been rightfully entitled to possession. The issue of right to possession was tried and the trial court held that the right of possession was in the defendant Deardon during the period involved in the previous action. However, it assessed $1 nominal damages against defendants for failure of Deardon to give possession as required ·by the judgment in the forcible entry and detainer action. The plaintiffs appealed. The defendants cross-appealed from the judgment for nominal damages. This court affirmed that part of the judgment denying plaintiffs' damages for deprivation of possession and reversed that part which gave judgment against defendants for nominal dam- · ages, holding that if the plaintiffs never had the right of possession they were not entitled to even nominal damages against defendant in a suit where that issue could be and was raised and was decided against them. For similar reasons we hold in this case that the plaintiffs were not entitled to a writ of restitution or judgment for damages on their first and third causes of action in the Summit county case.

Referring now to plaintiffs' second cause of action in the Summit case, it is plaintiffs' contention that the trial court erred in failing to conclude that the defendant was liable for conversion of the chattels covered by their contract with him. This claim must fail with the plaintiffs' claim for damages for failure of defendant to install the ski tow. If the plaintiffs were not entitled to a set-off on account of such damages, they were in default on their contract for purchase of these chattels to the extent of $2,800 on January 27, 1949, at which time they

allege the defendant wrongfully took possession of the chattels. On May 27 when plaintiffs made demand for possession of the chattels an additional $400 had become due, and at the time of trial another $500 was due, making $3,700 delinquent on the purchase price at the time of trial. There was no tender of payment of the delinquencies at any time. The contract provided that in case of failure of plaintiffs to make payment of any installment when due the defendant might repossess the fixtures and equipment retaining all sums theretofore paid as liquidated damages. The fact that defendant had extended until January 1, 1949, the time for payment of installments falling due prior to that date did not constitute any waiver of plaintiffs' agreement to pay according to the terms of the contract after that date.

"Where one party is in default and the other party is obliging him by agreeing to wait until a definite date * * * this is not the same as waiving strict performance by accepting payments after due dates." See concurring opinion by Mr. Chief Justice Wolfe in *Calhoun* v. *Universal Credit Co.*, 106 Utah 166, 177, 146 P. 2d 284, 289.

The case chiefly relied upon by plaintiffs herein, *Columbia Airways Inc.* v. *Stevens,* 80 Utah 215, 14 P. 2d 984, 985, is not in point. That case was a claim and delivery action. Defendant, who took possession of an airplane covered by a conditional sale contract without any notice of intention to terminate the contract, had accepted a payment upon the purchase price subsequent to the date the last installment became due and had thereafter made several requests for payment of the balance owing but had made no demand for possession of the plane. It was held that such conduct on the part of the seller sufficiently showed an intention to waive strict performance, and required him to give notice of intention to terminate the contract before repossessing the property. It was further held that when the purchaser tendered the full amount owing on the contract within four days after the seller wrongfully took possession, he, the purchaser, became entitled to possession and title to the

property. In the case at bar the extension of time was to a definite date. There was no acceptance or offer to accept payment thereafter. The defendant did not take possession of the chattels until twenty-six days after the date to which he had extended time for payment of delinquencies. There was no tender or offer on the part of the purchaser to pay the delinquent installments. The right to possession of the property was therefore in the defendant by the terms of the contract. Hence there was no conversion.

"The general rule is that an action for conversion is not maintainable unless the plaintiff, at the time of the alleged conversion, is entitled to the immediate possession of the property." 53 Am. J. 863; *Johnson* v. *Flowers,* 119 Utah 425, 228 P. 2d 406.

The case of *Calhoun* v. *Universal Credit Co.,* 106 Utah 166, 146 P. 2d 284, cited by plaintiffs, is readily distinguishable from this case. In that case the court found that there had been an indefinite time extension by an agent of the seller and no notice given of the expiration of such time. The seller had also accepted a number of tardy payments from the buyer. It was therefore held that the repossession and resale of the automobile by the seller without demand or notice constituted a conversion.

The case of *Fausett* v. *General Electric Contracts Corporation,* 100 Utah 259, 112 P. 2d 149, cited by defendant, more nearly resembles the present case. In that case the right of the assignee of a seller to repossess an electric refrigerator was upheld although he entered the home of the buyer in the absence of the buyer and his family it being pointed out that there had been no indefinite extension of time, and that a letter from the seller, giving the buyer until May 10th to arrange some final disposition of the account, could not be considered as a waiver of the seller's right to retake the property on May 29th. In the present case it must be remembered that the defendant on January 12, 1949, served notice on the plaintiffs that they were delinquent on rental payments owing on their con-

tract with him and unless such delinquencies were paid within three days legal proceedings would be instituted to recover possession of the premises. Although that notice did not mention delinquencies on the purchase price of the equipment and fixtures, it nevertheless must have indicated to the plaintiffs the determination of the defendant to enforce the terms of the contract. The fact that plaintiffs ten days later instituted their action for damages for failure of defendant to install the ski tow lends support to such a belief.

The judgment of the trial court in each of the cases involved is affirmed, with costs to respondent.

WADE, LATIMER and McDONOUGH, JJ., concur.

WOLFE, Chief Justice (dissenting).

I dissent. Plaintiffs and appellants contend that the trial court, in the Salt Lake County case erred in its conclusion of law:

"That by reason of plaintiffs' failure to make the payments of rent, provide the insurance coverage and payment therefor, as provided for in said contract, and failure to pay the expenses and obligations incurred in connection with their operation of the business known as 'Ski Inn' after October 1, 1948, as provided in said contract, and their insolvency on October 1, 1948 defendant was excused and was not obligated to install a ski tow, as provided in said contract."

Paragraph 8 of the sale and lease agreement provides:

"First party [defendant Knight] agrees that he will install near the said Ski Inn, not later than the beginning of the 1948-49 ski season, a fully operable ski tow. It is expressly agreed, however, that none of the proceeds from such ski tow will go to the Second parties [plaintiffs]".

As the main opinion points out, plaintiffs paid $3,000 at the time of execution of the agreement and paid $125 rent for the months of May and June. They insured the equipment for $6,500 but provided no insurance on the building.

The June payment of $3,000 to apply on fixtures and equipment was orally extended by defendant. This brings us up to what I consider the critical month of August 1948.

Accepting the findings in the Salt Lake County case (see difference on this point in the majority opinion) the facts are that defendant agreed that if the plaintiffs paid $1,000 on the fixtures and made prompt payment of the arrears in rent and provided insurance coverage, that he would agree to a moratorium as to the $2,000 balance on the fixtures until January 1, 1949. Plaintiffs paid $1000 on August 9th. A third party, A. L. Rudy, was at all times ready and willing to construct a ski tow at no expense to defendant, when instructed to do so by defendant. Yet on August 27th defendant informed plaintiffs that no ski tow would be installed by defendant unless the rent and full insurance coverage were paid for.

The trial court's conclusions of law that the defendant's promise to have the ski tow constructed was excused must be based on one of two theories; either that the plaintiff's breach in failing to pay rent, etc., was first in point of time or that it was a substantial failure of performance which excused defendant's breach. This contract is executory in so many of its features that it is erroneous to excuse the defendant's breach merely because the plaintiffs defaulted first. The nature and inherent importance of the respective covenants breached must be the decisive factor in our determination whether justification existed or not.

I believe that the building of the ski tow was a material factor and the principal inducement to plaintiffs' execution of the lease agreement. The principal source of income to the Ski Inn would be from customers who would be attracted by the operation of the ski tow. Success hinged upon performance of this covenant. It was an essential if not vital part of the consideration. On August 27th, when defendant announced his refusal to perform this part of

the agreement, plaintiffs owed two months back rent ($250) and had bought $6,500 worth of insurance instead of $15,000 as provided in the contract. Plaintiffs had paid $4,000 on the purchase price, $250 in rent and had expended some $2,000 on permanent improvements. Defendant had agreed less than three weeks previously to postpone payment of the balance of the purchase price until the winter season got under way. He treated the contract as though fully in effect, but insisted on complete payment of rent and insurance before he would instruct Rudy to build the ski tow. Williston on Contracts, Revised Ed., Vol. 3, page 2360, states the rule as follows:

"Where several promises are made by one party, a breach of one of them necessarily goes to only part of the consideration, but it may be a vital part, or it may be a minor part. A breach of a separate collateral promise of minor importance will not justify refusal by the other party to perform if the main promise to him has been or is being substantially performed".

See also comment A on Section 275 of the Restatement of the Law of Contracts.

The majority opinion states in effect that the plaintiffs acquiesced in the defendant's refusal to have the ski tow built by failing to demand that this be done. Defendant told the plaintiff in plain words that he refused to order the ski tow built. His intention was clearly expressed. Must the plaintiffs thereafter implore or insist that defendant perform? I know of no rule of law that requires a party to a contract to insist upon the other party's performance after he has just been told that performance will not be forthcoming until all demands are complied with. There is no estoppel here. Nor is plaintiffs' failure to ask in their pleadings that defendant be required to build a ski tow, material. The agreement had completely broken down at the time plaintiffs filed their complaint. The complaint prayed for damages for the defendant's failure to perform this part of the agreement.

Especially in view of the judgment rendered against plaintiffs for $750 rent for the months of July through December 1948, I believe that the court erred in excusing defendant's failure to have the ski tow constructed. The trial court has granted specific performance to the defendant in that he required plaintiff to pay rent for the period of time that defendant's vital breach is said to be excused. Certainly there is no estoppel in this case, nor is the promise to build a ski tow of such minor significance that defendant's breach in regard thereto is considered inconsequential in view of the judgment against plaintiffs for rent.

I would reverse the judgment and remand the case to the trial court. In view of my minority position, it is not necessary to express my opinion whether the damages of each should be ascertained and offset, or if under these circumstances the court should determine whether or not the liquidated damages clause was in reality a penalty clause, so as to permit equity to abrogate it and assess the actual damages only.

CROCKETT, J., being disqualified, did not participate herein.